**GOODYEAR TIRE & RUBBER CO. et al. v.
NATIONAL LABOR RELATIONS
BOARD.**

No. 8878.

Circuit Court of Appeals, Sixth Circuit.

Aug. 15, 1941.

Dwight K. Parsons and L. M. Buckingham, both of Akron, Ohio (Buckingham, Doolittle & Thomas, of Akron, Ohio, on the brief; Howard L. Hyde, of Cleveland, Ohio, and Walter E. deBruin, of Akron, Ohio, of counsel), for appellants.

A. Norman Somers, of Washington, D. C. (Robert B. Watts, Malcolm F. Halliday, A. Norman Somers, and David Rein, all of Washington, D. C., on the brief), for appellee.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from an order of the District Court granting an application of the National Labor Relations Board for an order directing obedience to certain subpoena duces tecum theretofore issued by the Board pursuant to § 11(1) of the National Labor Relations Act, Title 29, U.S.C., § 151 et seq., 29 U.S.C.A. § 151 et seq.

Two questions are presented: (1) Whether the proceeding instituted in the District Court to compel compliance with the subpoenas of the Board is a suit of a civil nature governed by the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and (2) whether the District Court erred in ordering full compliance with the subpoenas duces tecum without first requiring the Board to show that it had reasonable grounds for believing that the data and records which the appellants had refused to furnish contained evidence tending to prove the charges of unfair labor practice made in the complaint.

█ The company urges that the proceeding is a civil suit and that the District Court must be reversed for failure to issue process, to grant a hearing, and to make findings of fact and conclusions of law in accordance with such rules. We agree with the District Court that the proceedings plainly are of a summary nature not requiring the issuance of process, hearing, findings of fact, and the elaborate process of a civil suit. We think the procedure to be followed in the District Court is controlled by § 11(2) of the Act, Title 29, U.S.C., § 161(2), 29 U.S.C.A. § 161 (2) which reads:

"In case of contumacy or refusal to obey a subpena issued to any person, any District Court of the United States * * * within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question."

It is significant that the statute calls for an "application" rather than a petition, for an "order" rather than for a judgment, and that it details no other procedural steps. Obviously, if the enforcement of valid subpœnas, the issuance of which is a mere incident in a case, were to require all of the formalities of a civil suit, the administrative work of the Board might often be subject to great delay. We think that such was not the intention of the Congress, and that this clearly was indicated by the use of the simple and unambiguous words with which it described this proceeding. Our conclusion is fortified by the Notes of the Advisory Committee as to Rule 45 of the Federal Rules, which state that it "does not apply to the enforcement of subpœnas issued by administrative officers and commissions pursuant to statutory authority. The enforcement of such subpœnas by the district courts is regulated by appropriate statutes."

A similar conclusion has been reached as to this question in numerous cases arising in the District Courts and in one Circuit Court case, Cudahy Packing Co. v. National Labor Relations Board, 10 Cir., 117 F.2d 692. The cases relied upon by appellants as requiring a contrary conclusion were decided before the adoption of the rules and do not construe either the rules or the particular statute. We think they are not controlling here.

A more difficult question is presented with reference to the merits, namely, whether the order should be affirmed in the form in which it was issued, or whether it should be modified to limit the scope of the subpœnas. The complaint before the Board was issued on April 26, 1939, and the various charges cover the period from February 3, 1936, up until that date. It charges the company with unfair labor practices in connection with the alleged formation and encouragement of a company union, the disparagement of the United Rubber Workers of America, Goodyear Local No. 2, affiliated with the C. I. O., and in that connection with the discharge in 1937 of six named employees, with the demotion in 1937 and 1938 of thirteen named employees, with the lay-off from employment and failure to recall to employment or with the failure to

recall to employment during 1938 of sixty-eight named employees, and with the failure to recall to employment during 1938 and 1939 of six named employees, and alleges in substance that the company discriminated against these employees because of their membership in or activity on behalf of the union.

The subpœnas served are extremely sweeping. They demand, among other documents agreed to be given, and not here discussed, (1) the continuous service cards and requisition cards of all individuals now working in 158 of some 300 departments of the company's factory; (2) all employment record cards and all compensation records of all employees now working in such 158 departments; (3) the compensation records of all individuals employed in such 158 departments; (4) all employment and compensation records of a list of some 135 individuals; (5) the names of all employees hired in, transferred to or from the 158 departments from January 1, 1937, to the date of service of the subpœnas and the employment record cards of all such employees; (6) a card index of all active and inactive employees showing the name, department and clock-card number. This last item, appellants state, would require the company to give the Board 600,000 names.

The company has offered to give the Board detailed information contained in employment records, compensation cards, and payroll information with reference to all employees in any operation in any of the departments who are charged to have been preferred over the persons alleged in the complaint to have been unfairly treated. Repeated requests were made by the company's attorneys for the names of any individuals who the Board contends have been preferred over any one of the complainants. These requests were not complied with.

The company shows by affidavits, which are in no way denied, that a "continuous service card" is issued to each workman in the factory, and that this record of the workman's service is locked in a glass-covered case along with the similar cards of all other employees in the operation. This rack is open for inspection by each employee at any time, and is also continually inspected by the union committeemen for the purpose of determining the relative position of the employees from the standpoint of continuous service at times of layoffs and rehiring. The company asserts that prior to July, 1938, men were employed and laid off on a job seniority basis which did not permit a transfer from one operation to another in case of layoff if the employee laid off was the youngest man in service in the operation even though he had more years of service with the company than the man retained. In July, 1938, a new policy was adopted under which an employee subject to layoff under the job seniority rule was permitted to transfer to any other operation in the factory on which he had had previous satisfactory experience, in preference to workmen who had had less continuous service with the company. The company therefore urges that producing all records of all employees in the 158 departments in no way relates to the determination of the question as to who is entitled to a job. This question, it urges, can be decided only by a study of the operations involved.

It is also contended that since the workmen and the union have had access to the continuous service records of every employee in the factory during the period in controversy, the Board is not in good faith requiring access to such extensive records. The company urges that the comparison should be confined to operations and not to departments, and that the subpœnas require the production of a large amount of immaterial and irrelevant data.

■ In view of the change from the system of plant seniority to what the company calls the system of operation seniority plus plant seniority, in 1938, during the period in controversy, we cannot say that the data asked for from the 158 departments does not relate to the matter in question. As to the subpœna for data concerning the 135 named individuals, we think the list may be considered a partial response to the company's demand for information as to individuals alleged to have been preferred over the complainants. The company does not allege that the names are fictitious, and we hold that this data is properly sought.

The statute under which application for the subpœnas is made gives the Board power to subpœna any evidence "that relates to any matter under investigation or in question" Title 29 U.S.C., § 161(1), 29 U.S.C.A. § 161(1), and the court is given jurisdiction, upon application by the Board, to issue an order requiring obedience to the subpœna calling for the production of "evidence" "touching the matter under in-

vestigation or in question." 29 U.S.C., § 161(2), 29 U.S.C.A. § 161(2).

While the subpœnas here are specific as to their itemization of the documentary evidence sought and cover the period described in the complaint, we think that the subpœna calling for the card index of all active and inactive employees does not call for "evidence that relates to any matter under investigation or in question." The Board virtually concedes this when it asks for these cards not as evidence, but in order to facilitate the examination of other data. The subpœnas must be obeyed if the documents called for contain evidence which relates to the matter in question. Interstate Commerce Commission v. Brimson, 154 U.S. 447, 476, 14 S.Ct. 1125, 38 L.Ed. 1047. The importance of the term "evidence" was stressed by Mr. Justice Holmes in Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 306, 44 S.Ct. 336, 337, 68 L.Ed. 696, 32 A.L.R. 786, a decision which construed a statute practically identical, empowering the Federal Trade Commission to issue subpœnas and to have them enforced by the District Court, when he pointed out that "The right of access given by the statute is to documentary evidence—not to all documents, but to such documents as are evidence. The analogies of the law do not allow the party wanting evidence to call for all documents in order to see if they do not contain it. Some ground must be shown for supposing that the documents called for do contain it. Formerly in equity the ground must be found in admissions in the answer. * * * We assume that the rule to be applied here is more liberal but still a ground must be laid and the ground and the demand must be reasonable."

It is not difficult here to decide what "the matter * * * in question" is with relation to which these subpœnas are asked. It is neither the structure nor the commercial history of the company, the extent of its operations, nor the general financial relations between itself and its workers. The matter in question is not the entire scope of the company's labor relationships. The Board calls for all of this data as bearing upon the alleged discriminatory discharges, layoffs or demotions of the 93 employees named in the complaint. Obviously the request for the card index, said to be of 600,000 employees, necessarily contains a vast amount of irrelevant material. The request for it is well "out of proportion to the end sought." Cf. McMann v. Securities and Exchange Commission, 2 Cir., 87 F.2d 377, 109 A.L.R. 1445. While certain of the data demanded in the American Tobacco Co. case, supra, was more sweeping and less definitely itemized than much of that demanded here, it was no more extensive than this demand for the card index. Paraphrasing the statement in the American Tobacco Co. case, we assume for present purposes that some part of this enormous number of cards may be so connected with charges of discrimination with respect to 93 employees as to relate to the matter in question, but that possibility does not warrant a demand for the whole. It was suggested in the American Tobacco Co. case, supra, that the company would probably be willing to produce such papers as it conceived to be relevant to the matter in hand. In the instant case such offers to produce have actually been made. We think that with reference to the card index, the rule laid down in the American Tobacco Co. case also applies, that if the company's conclusion that this index is not relevant is not final, at least some evidence must be offered to show that it is wrong. This evidence obviously, under the ruling of the American Tobacco Co. case, 264 U.S. at page 306, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786, must be produced by the Board.

We differ with the District Court in its view that the only question presented by the Board's application is whether the subpœnas were regularly issued and duly served in accordance with the Board's statutory power, and that there has been a refusal to obey. The statute does not require the District Court to issue the order, but simply gives it jurisdiction to issue. The enforcement of the subpœna is thus confided to the discretion of the District Court, which is to be judicially exercised. We think that the review in this case extends no further than the determination as to whether or not there was an abuse of its discretion. Applying this rule, we think that it was open to the company to contend that the documents called for do not relate to the particular matter in question; that this contention made in the answer raises an issue of fact for determination by the court, and if determined in its favor, that the application of the Board as to documents found not so to relate should be dismissed upon the merits. Interstate Commerce Commission v. Brimson, supra, 154 U.S. at page 490, 14 S.Ct. 1125, 38 L.Ed.

1047. Applying the rule of the American Tobacco Co. case, supra, to the uncontradicted facts of the record, we conclude that the order appealed from exceeded the fair limits of judicial discretion in ordering that the subpœna issue with reference to the card index. As to other items the order is affirmed, but as to the card index the case is remanded for reconsideration on evidence in accordance with this opinion.