296 F.2d 861
 Elmer C. ADAMS, Sr., and Adams Dairy Company, Elmer C.
Adams, Jr., and Adams Dairy, Inc., Appellants,
v.
FEDERAL TRADE COMMISSION, Appellee.
FEDERAL TRADE COMMISSION, Appellant,
v.
Elmer C. ADAMS, Sr., and Adams Dairy Company, Elmer C.
Adams, Jr., and AdamsDairy, Inc., Appellees.
 Nos. 16745, 16747.
 United States Court of Appeals Eighth Circuit.
 Nov. 24, 1961.
 
 Alvin L. Berman, Atty., Federal Trade Commission, Washington, D.C., for Federal Trade Commission and James McI. Henderson, Gen. Counsel, Federal Trade Commission, Washington, D.C., and Alan B. Hobbes, Asst. Gen. Counsel and Charles D. Gerlinger, Atty., Federal Trade Commission, Washington, D.C., on the brief.
 John J. Hasburgh, Kansas City, Mo., for Adams Dairy Co., Elmer C. Adams, Sr., and others, Hillix, Hall, Hasburgh, Brown & Hoffhaus, and James C. Wilson, Kansas City, Mo., on the brief.
 Before SANBORN, MATTHES and RIDGE, Circuit Judges.
 MATTHES, Circuit Judge.
 
 
 1
 These are cross appeals from an order of the United States District Court for the Western District of Missouri entered in connection with proceedings pending before the Federal Trade Commission.
 
 
 2
 Pursuant to the provisions of the Federal Trade Commission Act (38 Stat. 717, 15 U.S.C.A. 41 et seq., 52 Stat. 111), the Federal Trade Commission, on September 24, 1959, issued complaints as follows: In Commission Docket No. 7596 against Adams Dairy Company, Adams Dairy, Inc. and The Kroger Company; in Commission Docket No. 7597 against Adams Dairy Company, Adams Dairy, Inc. and Safeway Stores, Inc.; and in Commission Docket No. 7598 against Adams Dairy Company, Adams Dairy, Inc. and The Great Atlantic and Pacific Tea Company, Inc.[1] The complaints are similar, each alleging that Adams and one of the grocery corporations, Kroger, Safeway or A & P, have maintained and effectuated a conspiracy, combination, agreement and understanding in the sale and distribution of dairy products in restraint of trade, in violation of 5 of the Act.[2] The practices, acts and conduct of the respondents relied upon in part in furtherance of the conspiracy are alleged in more detail and will be elaborated on in considering Commission's appeal in No. 16,747.
 
 
 3
 On February 18, 1960, the hearing examiner assigned to conduct the hearing issued six administrative subpoenas ad testificandum and duces tecum. Three were issued to Adams, Sr. and ADC and three were issued to Adams, Jr. and ADI. While the subpoenas are similar as to documentary material called for, there are differences, and during consideration of the appeal in No. 16,747, additional reference will be made of such differences as far as may be necessary to resolution of the questions presented therein. Motions to quash the subpoenas were filed by Adams, Sr., Adams, Jr. and Adams, and were overruled by the hearing examiner and the Commission denied an appeal from his ruling. On September 12, 1960, at Kansas City, Missouri, the examiner was advised that Adams, Sr. and Adams, Jr. would not comply with the subpoenas. On September 12, 1960, the Commission applied to the United States District Court for an order to compel attendance of witnesses and production of documents at times and places to be fixed by the hearing examiner.[3] An order to show cause was issued by the district court and thereafter respondents in said proceeding (Adams, Sr. and Adams, Jr. and Adams) filed returns alleging, inter alia, that the subpoenas were invalid because they were not issued pursuant to a lawful complaint.
 
 
 4
 Following submission of the administrative subpoena enforcement proceedings to the district court, the hearing examiner scheduled a hearing for February 6, 1961, in Kansas City, Missouri. The Commission's counsel advised appellants in No. 16,745 that, among others, employees of Safeway, apparently officials of that company, would be questioned regarding operations of Safeway and the relationship which such officials have have with Adams. An unsuccessful attempt was made to secure cancellation of the hearing and thereupon Adams filed a motion in the United States District Court for the Western District of Missouri to stay the proceeding scheduled for February 6, 1961. The basis for this motion was that the Commission was seeking the same information from Safeway employees that it sought to obtain from Adams, Sr., Adams, Jr. and Adams by the subpoenas under attack, before the district court had determined whether the subpoenas should be enforced. The court issued an order to show cause and an order staying the hearing until the further order of the court. On March 27, 1961, the district court issued its order granting in part and denying in part the petition of the Commission for enforcement of the subpoenas and denying the motion to stay further proceedings. These appeals are from this order. The hearing examiner on March 31, 1961, scheduled another hearing for April 17, 1961, in Kansas City, Missouri. Appellants in No. 16,745 were advised that the subject matter of the hearing scheduled for that date was the same as that stated for the hearing previously set for February 6, 1961. Again Adams requested that the hearing be continued and when the request was denied, motions were filed in this court on April 14, 1961, for an order to stay further proceedings by the Commission. Upon consideration of the motions, we directed that the Commission show cause on or before April 24, 1961, why the hearing scheduled for April 17, 1961, would not have the operation and effect of depriving Adams of their rights on appeal as well as also circumventing the benefits and rights accruing to them under the parts of the order from which the Commission had appealed issued in the district court on March 27, 1961. We also directed that the hearing scheduled for April 17, 1961, be stayed until the disposition of the matter on the show cause order. After a hearing on April 24, 1961, this court, on May 16, 1961, entered an order denying the motion of Adams to stay or postpone the Commission's taking of evidence and testimony from Safeway and vacating the temporary theretofore granted.
 
 Appeal in No. 16,745
 
 5
 Is the district court vested with jurisdiction to consider and adjudicate the sufficiency of the original complaints filed by the Commission in the proceedings pending before that agency? That is the sole question presented for determination in this appeal. Appellants concede that the Commission was authorized under 5 of the Act to institute and prosecute proceedings for the purpose of determining whether there has been a restraint of trade as proscibed by 1 of the Sherman Act, 15 U.S.C.A. 1. But they contend that the district court is authorized to test the sufficiency of the complaint for the purpose of determining whether it forms a basis for the issuance of subpoenas. The Commission's position is that this is a function within the exclusive jurisdiction of the Commission and, upon review, within the exclusive jurisdiction of this court.
 
 
 6
 The district court sutained the Commission, stating in its order of March 27, 1961: 'The Petitioner (Commission) insists that this court is without jurisdiction to determine the question of the sufficiency of the Complaint, that this right is vested solely in the Court of Appeals. With this contention I am in accord. I do not believe this court has jurisdiction to determine that question.'[4]
 
 
 7
 Section 5(b) of the Act, 15 U.S.C.A. 45(b), authorizes the Commission to issue complaints, conduct proceedings, hold hearings, resolve issues, and to enter appropriate orders. Section 5(c), 15 U.S.C.A. 45(c), provides for a review of the proceedings before the Commission by the appropriate United States Court of Appeals, and 5(d), 15 U.S.C.A. 45(d), provides: 'The jurisdiction of the court of appeals of the United States to affirm, enforce, modify, or set aside orders of the Commission shall be exclusive.' The Act does not expressly, or by implication, confer upon district courts authority to interfere with proceedings properly and lawfully instituted. Not only is there no statutory support for the contention advanced by appellants, but such a concept is contrary to the deep-rooted principle that parties must exhaust their administrative remedies before they can properly and successfully enlist the aid of courts. Myers v. Bethlehem Shipbuilding Corp.,303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Newport News Shipbuilding & Drydock Co. v. Schauffler, 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646; cf. Federal Power Commission v. Metropolitan Edison Co., 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408; Rochester Telephone Corp. v. United States, 307 U.S. 125, 129, 130, 59 S.Ct. 754, 83 L.Ed. 1147; United States v. Illinois Central R.R. Co.,244 U.S. 82, 37 S.Ct. 584, 61 L.Ed. 1007. See also note in 51 Harvard Law Review, p. 1251, Primary Jurisdiction-- Effect of Administrative Remedies on the Jurisdiction of Courts. In Myers v. Bethlehem Shipbuilding Corp.,supra, a leading case on the subject of exhaustion of administrative remedies, the Supreme Court, speaking through Mr. Justice Brandeis, stated, 303 U.S. at pp. 51-52, 58 S.Ct. at pages 464:
 
 
 8
 'Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact.'
 
 
 9
 In Chamber of Commerce of Minneapolis v. Federal Trade Commission, 8 Cir., 280 F.2d 45, 48, we considered the question, and stated at p. 48:
 
 
 10
 'It is our judgment that neither the District Court nor this court has power under the act to interfere with the investigation and inquiry of the Commission, involving the taking of testimony and the finding of facts essential to the making of such an order as shall ultimately be passed upon by the Circuit Court of Appeals for enforcement, affirmance, modification, or setting aside.'
 
 
 11
 In Chamber of Commerce, supra, and in Crown Zellerbach Corporation v. Federal Trade Commission, 9 Cir., 156 F.2d 927, unsuccessful attempts were made in the district court to enjoin agency action. While appellants are not directly challenging the power of the Commission to proceed with the investigation initiated by it, their attempt to curb any power of the Commission through an assault on the complaint because of vagueness and indefiniteness, is an effort to accomplish by indirection what they cannot do by direct action. Miles Laboratories v. Federal Trade Commission, 78 App.D.C. 326, 140 F.2d 683, cert. den. 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582. Perkins v. Endicott Johnson Corp., 2 Cir., 128 F.2d 208, aff'd 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 492, pertinently ecunciates the principle in this language, 128 F.2d at pp. 218-219:
 
 
 12
 'Had the defendants in the case at bar sought an injunction against the administrative proceeding, they would have failed in their effort. Cf. Federal Power Commission v. Metropolitan Edison Co. (304 U.S. 375, (1938)); Myers v. Bethlehem Corp. (303 U.S. 41, (1938)); Newport News Co. v. Schauffler (303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646, 58 S.Ct. 459, 82 L.Ed. 638, 58 S.Ct. 963, 82 L.Ed. 1408 (1938)). Yet if the trial court's position in the instant case were tenable, the same result could be accomplished by indirection: a respondent in an administrative hearing could refuse to respond to a subpoena and, in a suit in court to compel enforcement of the subpoena, the court could do what it is forbidden to do under Blair v. United States (250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919)). The doctrine of the Bethlehem, Schauffler and Edison cases would become frivolous and lack real substance; it would relate merely to one procedural device utilized by a respondent wishing to have the courts interfere with what the Supreme Court said, in those cases, was the 'exclusive initial power' of the administrative officials to investigate and determine their own jurisdiction. If defendants were to win here, they would have discovered a way of 'running around the end' when blocked at the center. We do not take so lightly those recent and as yet undisturbed Supreme
 
 After this case has run the gamut of
 
 13
 After this case has run the gamult of administrative proceedings and if an order is entered adversely affecting appellants, they may, if they so desire, secure judicial review, of any action taken by the Commission. United States v. Morton Salt Co., 338 U.S. 632, 643, 70 S.Ct. 357, 94 L.Ed. 401, but until the administrative proceedings have been exhausted and terminated, they cannot permissibly invoke the aid of a court for the purpose of securing judicial determination of the question here presented.
 
 
 14
 The district court properly determined it lacked jurisdiction to test the sufficiency of the complaint, and its order in that respect is affirmed.
 
 Appeal in No. 16,747
 
 15
 Commission's appeal is from the court's order denying enforcement of part or all of a number of specifications of the subpoenas duces tecum, and from the court's failure to enforce other provisions of the subpoenas. The parties to whom the subpoenas were directed (Adams, Sr. and ADC, Adams, Jr. and ADI) did not appeal from that portion of the order directing enforcement as to the whole or portions of certain specifications. Thus, the appeal brings into focus the propriety of the court's action in denying enforcement. Before proceeding to consideration of the specifications, enforcement of which was denied, we examine the legal standards or guides which are to be applied in resolving the enforcement issue.
 
 
 16
 Section 9 of the Federal Trade Commission Act, Title 15 U.S.C.A. 49, empowers the Commission to examine documentary evidence of any corporation being investigated or proceeded against, and to 'require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation.' This statutory authority was judicially determined to be similar to discovery proceedings afforded by the Federal Rules of Civil Procedure by the Supreme Court of the United States in Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, at page 216, 66 S.Ct. 494, at page 509, 90 L.Ed. 6148 where the court stated:
 
 
 17
 'The result therefore sustains the Administrator's position that his investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's, or the court's in issuing other pretrial orders for the discovery of evidence, and is governed by the same limitations. These are that he shall not act arbitrarily or in excess of his statutory authority, but this does not mean that his inquiry must be 'limited * * * by forecasts of the probable result of the investigation * * *."
 
 
 18
 The investigatory authority of an administrative agency is not without limitations. There is general unanimity among the courts that a subpoena meets the requirements for enforcement if the inquiry is (1) within the authority of the agency; (2) the demand is not too indefinite, and (3) the information sought is reasonably relevant. United States v. Morton Salt Co., 338 U.S. 632, 652, 653, 70 S.Ct. 357, 94 L.Ed. 401; Oklahoma Press Publishing Co. v. Walling, supra, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614; Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509, 63 S.Ct. 339, 87 L.Ed. 492; Civil Aeronautics Board of Hermann, 353 U.S. 322, 77 S.Ct. 804, 1 L.Ed.2d 852; United States v. Woerth, D.C., 130 F.Supp. 930, 942, aff'd sub nom. Woerth v. United States, 8 Cir., 231 F.2d 822; Chapman v. Maren Elwood College, 9 Cir., 225 F.2d 230; McMann v. Securities and Exchange Commission, 2 Cir., 87 F.2d 377, cert. den. McMann v. Engel, 301 U.S. 684, 57 S.Ct. 785, 81 L.Ed. 1342; Hunt Foods and Industries, Inc. v. Federal Trade Commission, 9 Cir., 286 F.2d 803, 811, cert. den. 365 U.S. 877, 81 S.Ct. 1027, 6 L.Ed.2d 190; McGarry et al. v. Securities and Exchange Commission, 10 Cir., 147 F.2d 389, 392; Walling v. American Rolbal Corporation, 2 Cir., 135 F.2d 1003, 1005; Federal Communications Commission v. Cohn, S.D.N.Y., 154 F.Supp. 899.
 
 
 19
 If it is made to appear that the demand is too indefinite or that the data sought is not reasonably relevant, the agency action is generally regarded as being unreasonable and arbitrary, and the courts will deny enforcement. As stated in the Cohn case, supra, 'Of course the subpoena power must at all times be confined to 'the rudimentary principles of justice,' and the courts will plainly refuse to enforce an administrative subpoena which is not within the bounds of reasonableness.' 154 F.Supp. 908. 'The process is lawful if it confines its requirements within the limits which reason imposes in the circumstances of the particular case.' McGarry et al. v. Securities and Exchange Commission, supra, 147 F.2d at p. 392.
 
 
 20
 Initially the administrative agency must exercise its discretion in determining what information it will require in making the investigation, but when the jurisdiction of the court is invoked in an enforcement proceeding, it must be judicially determined whether the agency abused its discretion; in other words, the court must determine whether the subpoena power has been confined to the rudimentary principles of justice. Federal Communications Commission v. Cohn, supra; McGarry et al. v. Securities and Exchange Commission, supra; cf. Walling v. American Rolbal Corporation, supra.
 
 
 21
 While there is a suggestion by appellees that the specifications fail to properly specify the documents sought, their principal claim is that the subpoenas called for irrelevant material and that 'they are unduly broad and burdensome and unreasonable in scope.' In determining whether the Commission is entitled to enforcement in light of the standards or tests to be applied, we must lay the specifications alongside the complaints. In summary, the complaints charge Adams and the respective grocery companies (Kroger, Safeway and A & P) with maintaining a conspiracy in restraint of interstate trade in Missouri, Kansas, Illinois and Kentucky. Each complaint alleges, inter alia, that in furtherance of the conspiracy, the named respondents had pursued the policy and practice of fixing prices and coercing competitors into maintaining prices and price differentals; that the grocery companies had engaged in territorial price wars and price discriminations and had given preferential treatment to Adams; that Adams and subsidized the practices and policies of the grocery companies in certain areas by various methods, which are enumerated in detail.
 
 
 22
 Since the parties are thoroughly familiar with the specifications and the precise data called for, we conclude that a summary thereof will suffice for purpose of this opinion.
 
 
 23
 Inasmuch as the district court's order dealt with the specifications in the subpoenas directed to Adams, Jr. and ADI, our summarization will be of the same subpoenas with appropriate references to subpoenas directed to Adams, Sr. and ADC.
 
 1. Books, records, etc., showing:
 
 24
 (a) types of products manufactured, processed, distributed, or sold from date of incorporation to September 24, 1959;[5]
 
 
 25
 (b) geographical areas in which each type of product in (a) was distributed and sold.
 
 
 26
 The district court enforced this provision but limited the time period, stating 'the period subsequent to 1954 should be adequate.'[6] The Commission contends the data sought by this specification is necessary to determine the nature and scope of Adams' business and is relevant to the allegation that the companies are engaged in interstate commerce. The period between October 1, 1954, and September 24, 1959, should prove entirely adequate to establish the nature and scope of Adams' business and that they are engaged in interstate commerce, concerning which there should not be much dispute.
 
 
 27
 2. Copies of annual reports to stockholders and profit and loss statements from date of incorporation (from January 1, 1940, for ADC) to September 24, 1959.
 
 
 28
 The district court refused to enforce this provision, stating that it was too broad in scope. However, since a conspiracy to fix prices is alleged to have existed 'for many years past' the material sought is relevant as it may disclose business relations with other companies and profit trends. As pointed out in Federal Communications Commission v. Cohn, supra, broadness alone is not sufficient justification to refuse enforcement of a subpoena so long as the material sought is relevant. It is readily apparent that many of the specifications of the subpoenas are broad in scope. However, when a conspiracy is alleged the search might take a broad sweep in order that information revealing the nature of the relationship between the alleged co-conspirators can be obtained.
 
 
 29
 3. Any documents or writtings relating to securing or maintaining licenses and permits required by law from January 1, 1950, to September 24, 1959.
 
 
 30
 The district court refused enforcement of this provision, stating that it was unreasonable, arbitrary and too broad in scope. The record reveals that subsequent to the filing of the complaint Adams filed motions for a bill of particulars and raised an issue regarding the use of independent distributors in the sale of their products. The method of distributing dairy products, that is, whether by independent contractors or agents and employees of Adams, is, in our opinion, relevant to the issue of Adams' responsibility for the acts and conduct of these distributors of dairy products. The documents called for in this specification should be limited, however, to the period from October 1, 1954, to September 24, 1959.
 
 
 31
 4. Any writings pertaining to the establishment, initial operating, or incorporation of ADI (ADC) prepared by ADI (ADC), officers, representatives or agents; from date of incorporation (from January 1, 1940, for ADC) to September 24, 1959.
 
 
 32
 The district court denied enforcement of this provision for the same reason relied upon in denying enforcement of Specification 3. Commission asserts that the conspiracy charged was initiated at or about the time of incorporation of Adams. The record discloses that in 1941 there was correspondence between Safeway and a bank in Kansas City relating to a contemplated loan to be made by the bank to 'Mr. Adams'. In view of this circumstance and the assertion by Commission that the conspiracy has existed for many years, the documents called for are reasonably relevant. Enforcement of this specification should be granted.
 
 
 33
 5. Any writings prepared by ADI (ADC), employees, etc., pertaining to the company's relations, dealings or business with: Kroger, Safeway, A & P, from date of incorporation (from January 1, 1940, for ADC) to September 24, 1959.
 
 
 34
 The district court stated 'If it (specification 5) were confined to the correspondence between the respondent and The Kroger Company, Safeway Stores, Inc. and The Great Atlantic and Pacific Tea Company, Inc. (it) would be a perfectly valid request.' The remainer of the specification was in the court's opinion 'entirely too broad.' Recognizing that direct proof of a conspiracy generally is not available and that a conspiracy ordinarily is established by developing circumstances from various sources of information, we conclude that this specification should not be limited to correspondence by Adams. If in fact a conspiracy was formed, evidence thereof is more likely to appear from other documents called for. Enforcement should be ordered.
 
 
 35
 6. Any writings of any kind prepared by ADI (ADC), employees, etc., pertaining to the company's relations, dealings, or business with dairy product customers other than the three companies named in Specification 5, from October 1, 1954, to September 24, 1959.
 
 
 36
 The trial court directed enforcement of this specification 'with the exception of memorandum made by officers, employees, representatives or agents of respondents.' The relevancy of the excluded memoranda is equally apparent. The specification should be inforced in toto.
 
 
 37
 Specification 7 and enforced by the district court and is not the subject of this appeal.
 
 
 38
 8. Books, records, etc., showing for the period October 1, 1954, to September 24, 1959:
 
 
 39
 (a) annual net sales of dairy products in gallons or pounds and dollars;
 
 
 40
 (b) monthly net sales in dollars and by quantities of each container size for each type of product sold directly or indirectly to Kroger, Safeway and A & P;
 
 
 41
 (c) locations where items in (b) were delivered and by whom.
 
 
 42
 While the court apparently approved Specification 8(a), it failed to specifically direct enforcement thereof. As to 8(b) and (c) the court entertained doubts as to 'how the respondents could be required to comply * * *,' stating that the records called for 'would require a boxcar to contain them.' In our view, the information called for in 8(b) and (c), while undoubtedly voluminous, may be revealing as to the effect of the alleged price was, price discriminations and other practices charged in the complaints. The court did not find that this data was irrelevant to the conspiracy charged. Enforcement should be granted.
 
 
 43
 Specification 9 was enforced and is not before us.
 
 
 44
 10. Books, records, etc., as will disclose payments, loans, advances, gifts or anything of value to ADI (ADC), officers, employees, etc., by Kroger, Safeway way and A & P from date of incorporation (from January 1, 1940, for ADC) to September 24, 1959, in connection with production, processing, purchase, distribution or sale of products or with the establishment, operation, or incorporation of ADI (ADC or ADI).
 
 
 45
 The district court refused to enforce this as being too broad in time and in scope. Evidence of payments made by the grocery stores, or any of them, to either ADC or ADI in connection with the establishment, operation or incorporation of either of the latter companies, could constitute proof of the effectuating of the alleged conspiracy and this portion of the specification should be enforced from the date of incorporation of each of the dairy companies. However, to require ADC and ADI to furnish the data which would disclose payments by the grocery companies for dairy products purchased for 20 years in one case (ADC) and 13 years in the other (ADI) would subject both companies to a burden wholly out of proportion to the end sought. Enforcement as to this portion of Specification 10 should be granted from the period of October 1, 1954, to September 24, 1959.
 
 
 46
 Specifications 11 and 12 of the ADI subpoena were enforced by the district court. Specification 11 of the ADI subpoena is identical with that number in the ADC subpoena. However, Specifications 12, 13 and 14 of the ADC subpoena do not appear in the ADI subpoena and apparently were not considered by the district court, at least the order reflects no action taken thereon. Specification 12 calls for:
 
 
 47
 12. (ADC) Books, records, etc., showing annual purchases of fluid milk in dollars and quantity from Pure Milk Producers Association of Kansas City, Missouri, from October 1, 1954, to September 24, 1959.
 
 
 48
 Specification 13 requests the same documents with respect to milk purchased from the Milk Producers Marketing Company, Kansas City, Kansas. Inasmuch as the complaint alleges that ADC made sales to the named grocery corporations below cost, the data reflecting the cost to that company would be relevant.
 
 
 49
 14. (ADC) Books, records, etc., showing the total number and dollar value of milk cartons purchased annually and suppliers thereof furnished to Milk Producers Marketing Company by ADC from October 1, 1954, to September 24, 1959.
 
 
 50
 The information sought by this specification is similar to that requested by Specifications 12 and 13 and is relevant for the same reason. Enforcement of these three specifications should be granted.
 
 
 51
 The remaining specifications are identical for ADC and ADI.
 
 
 52
 13. (15 ADC) Books, records, etc., disclosing names of all distributors of ADI (ADC) products from date of incorporation to September 24, 1959, and showing following information for each distributor:
 
 
 53
 (a) last mailing address;
 
 
 54
 (b) date when started handling ADI (ADC) products;
 
 
 55
 (c) date when stopped handling these products;
 
 
 56
 (d) reason distributors stopped handling these products;
 
 
 57
 (e) all cities and towns in distributor's original route;
 
 
 58
 (f) changes and dates changes in routes were made;
 
 
 59
 (g) names and addresses of all local customers of distributors.
 
 
 60
 The district court refused to enforce this specification, claiming it was too broad in time, was unreasonable and irrelevant. We agree with the district court to the extent that the subpoena is too broad in time. The Commission's position is that the documents sought are relevant to the determination of whether the distributors were independent contractors; for the purpose of determining the distributors which operated in particular area and for the purpose of obtaining information relating to specific price wars, price discriminations and sales below cost. The relationship between the distributors and Adams is the subject of other specifications. The Commission had limited other specifications concerning price wars, price discriminations and sales below cost to the period subsequent to October 1, 1954, (e.g. see Specification 8), and we see no reason why this request should not be so limited. The period prior to October 1, 1954, is not reasonably relevant to these allegations, particularly in view of the fact that the Commission itself has concentrated on activities subsequent to this time. Enforcement should be ordered for the period from October 1, 1954, to September 24, 1959.
 
 
 61
 14. (16 ADC) Books, records, etc., showing payments, rebates, discounts, loans, guarantees, advances, gifts or anything of value made by ADI (ADC), its officers, employees, representatives or agents to any distributor from date of incorporation to September 24, 1959.
 
 
 62
 The district court again refused enforcement because the specification was too broad in time. For the reasons stated in regarded to Specification 13 (ADC 15), the data called for should be limited to the period from October 1, 1954, to September 24, 1959. Enforcement accordingly ordered.
 
 
 63
 The district court enforced Specification 15 (ADC 17) stating: 'If this information is available without an audit of the Company's books, it should be made available. If it requires an audit * * * I think the books should be made available to petitioner so that it may do the work.' The Commission does not object to the condition imposed, and we find it reasonable. Therefore, the specification should be enforced in the manner speified by the district court.
 
 
 64
 In addition to the disposition made by the trial court of the specifications, it ruled that appellees should not be required to produce any documents or records, photostats of which are now in possession of the Commission, or available to it, as a result of any hearing which has heretofore been held with respect to the identical matter under consideration. From the record and briefs we are advised thta the Subcommittee of Antitrust and Monopoly of the Senate Judiciary Committee has conducted an investigation of the dairy industry, and Adams produced documentary evidence before that Committee. The district court was of the opinion that such evidence is available to Commission and therefore appellees should not be required to produce the same documents in hearings which may be conducted by the Commission. In its brief, Commission states it has obtained 'a few documents' from the Subcommittee but that because of limitations imposed by the Subcommittee it did not receive a large portion of the documents which was made available to that Committee. The Commission's brief also states that appellees have been assured by the Commission that if they would identify and authenticate those documents which Commission has actually received, appellees would not be required to include such documents in their return; that it does not desire a duplication of material already in its possession. It appears to us that the offer of the Commission is reasonable and the court may properly include in its order such conditions or restrictions that may be necessary to assure compliance with the offer of Commission.[7]
 
 
 65
 Finally, the court failed to order enforcement of the ad testificandum provisions of the subpoenas directed to Adams, Sr. and Adams, Jr. The Commission is unquestionably entitled to have these individuals appear as witnesses and the court should so order.
 
 
 66
 The order appealed from in No. 16,747 is reversed and the cause is remanded with instructions to the district court to direct by appropriate order enforcement of all of the subpoenas issued in the proceeding instituted by the Commission, in according with the determinations herein made.
 
 
 
 [1]
 The complaints allege: Adams Dairy Company is a Missouri corporation with its principal office and place of business in Blue Springs, Missouri; Adams Dairy, Inc., is a Missouri corporation with its principal office and place of business in St. Louis, Missouri; The Kroger Company, Safeway Stores, Inc. and The Great Atlantic and Pacific Tea Company are in the operation of retail grocery stores located in different states. The record also discloses that Elmer C. Adams, Sr. is president of Adams Dairy Company and Elmer C. Adams, Jr. is secretary of Adams Dairy, Inc. For convenience and brevity Adams Dairy Company and Adams Dairy, Inc. will collectively be referred to as Adams, and singularly as ADC and ADI; Elmer C. Adams, Sr. as Adams, Sr., Elmer C. Adams, Jr. as Adams, Jr.; The Kroger Company as Kroger, Safeway Stores, Inc. as Safeway, The Great Atlantic and Pacific Tea Company as A & P, and the Federal Trade Commission as Commission
 
 
 [2]
 Section 5 of the Act, 15 U.S.C.A. 45, provides:
 '(a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.
 'The Commission is empowered and directed to prevent * * * corporations * * * (exceptions here not material) from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce.'
 
 
 [3]
 Section 9 of the Act, 15 U.S.C.A. 49, in pertinent part is as follows:
 '* * * And in case of disobedience to a subpoena the commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.
 'Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any corporation or other person, issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.'
 
 
 [4]
 The court went further and held that even if appellants were correct in their contention that the court possessed jurisdiction to pass on the question, it was of the opinion that the complaint is adequate upon which to base the issuance of a subpoena and to conduct the examination incident to the investigation of the complaints against the various parties
 
 
 [5]
 It appears that ADC was incorporated in 1940 and Commission states it has reason to believe the ADI was incorporated in 1947. This is not disputed by ADI
 
 
 [6]
 In a number of the specifications the Commission fixed the cut-off date for data sought as October 1, 1954, or approximately five years prior to the data the complaints were filed
 
 
 [7]
 In enforcement proceedings, the court is authorized to impose reasonable conditions and restrictions with respect to the production of data, documents, etc., designated in the subpoenas. See and compare Federal Communications Commission v. Cohn, D.C., 154 F.Supp. 899, 913; Willing v. American Rolbal Corporation, 2 Cir., 135 F.2d 1003, 1005; Goldberg v. Truck Drivers, 6 Cir., 293 F.2d 807