## NATIONAL LABOR RELATIONS BOARD

v.

**Sidney FRIEDMAN, Comptroller, et al., Appellants,**

and

**Local 108, International Ladies' Garment Workers' Union, AFL–CIO, Intervenor.**

No. 15324.

United States Court of Appeals Third Circuit.

Argued June 18, 1965.

Decided Oct. 15, 1965.

Rehearing Denied Nov. 23, 1965.

McLaughlin, Circuit Judge, dissented.

Robert E. Banker, Fowler, White, Gillen, Humkey & Trenam, Tampa, Fla., and Stuart Linnick, Katz & Wolchok, New York City, for appellants.

Michael R. Brown, N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., N. L. R. B., on the brief) for N. L. R. B.

Jerome B. Kauff, New York City, for intervenor.

Before McLAUGHLIN, STALEY and FREEDMAN, Circuit Judges.

STALEY, Circuit Judge.

The Regional Director for the Fourth Region of the National Labor Relations Board, on the basis of a charge filed by Local 108 of the International Ladies' Garment Workers' Union, and after investigation, has issued a complaint alleging violation of § 8(a) (1) and (3)

of the Labor Management Relations Act by respondent Bannon Mills of Pennsylvania and other companies. The case was called for hearing before an examiner on August 3, 1964. In the interim, the General Counsel had obtained from the Board subpoenas requiring respondent companies to produce certain records at the hearing. On their refusal to do so, this proceeding was brought in the district court pursuant to 29 U.S.C. § 161(2). The district court ordered compliance with the subpoenas with modifications. Because it is important that the adjourned unfair labor practice proceeding be resumed as soon as possible, we have expedited the appeal which followed.[1]

The essential facts are as follows: On October 22, 1963, Local 108 of the International Ladies' Garment Workers' Union filed with the General Counsel a charge which alleged that respondent Bannon had arranged the transfer of work from its plant in Lebanon, Pennsylvania, to plants of certain other respondents, all of which are alleged to be part of an integrated operation.[2] This happened shortly before the charging union had obtained collective bargaining rights at the Lebanon plant and as it was about to commence collective bargaining negotiations.[3] The complaint followed.

The subpoenas duces tecum required the production of books and records necessary for the prosecution of the charge. In response to the subpoenas, some material was furnished at the hearing on August 5, 1964, but the respondents refused to comply fully with the subpoenas.

Although several grounds of objection to the subpoenas were raised at various stages of the proceedings, the only objection made and adhered to on this appeal stems from the announced intention of the General Counsel to use a union accountant and economist to analyze the records. In an attempt to meet the objections of the respondents, and with the acquiescence of the General Counsel, the order of the district court[4] provided that the charging-party personnel used in the examination of the evidence were not to be permitted to make copies, or reveal the content of the documents, or use the information for any purpose other than the prosecution of, preparation of, and participation in the present action. At the suggestion of the union, any information which might lead to the identification of respondents' customers and suppliers is to be deleted under the direction of the General Counsel. Respondents have declined to comply with the order even as modified by the protective provisions; instead, they have continued to try to "bargain" with the General Counsel. They now offer to help to obtain independent experts and to be

1. This court has stayed the order of the district court pending disposition of this appeal.

2. An Amended Charge was filed on March 19, 1964, adding the individual respondents.

3. The securing of bargaining rights normally would have resulted from an election to have been held on August 10, 1962, but the matter was not resolved until April 3, 1964, when the Board ordered Bannon to bargain. Bannon Mills, Inc., 146 N.L.R.B. No. 81.

4. The district court ordered respondents (appellants herein) to: "produce the books, records and documents described in the subpoenas duces tecum issued by the Board, and give testimony and answer any and all questions relevant and material to the matters under investigation and in question in said proceedings before the Board. It is provided, however, that the subpoenaed information is not to be disclosed by General Counsel or Counsel of charging party to charging party personnel, except insofar as it may be necessary for consultation with counsel in order to prepare for the prosecution and full participation in the action. Any such personnel obtaining access to information for this purpose shall not make copies, or reveal the contents of the documents, or use the information for any purpose other than the prosecution, preparation and participation in this action. And, confirming agreement of the parties, it is understood that any and all names and addresses or other information that would lead to the identification of customers and suppliers be deleted under the general direction of the General Counsel."

taxed for the costs of their services in the event that the Board is successful on the merits of the unfair labor practice charge.

Before beginning analysis of appellants' arguments, it is well for us to state the scope of review permitted in these cases. In Goodyear Tire & Rubber Co. v. NLRB, 122 F.2d 450, 453, 136 A.L.R. 883 (C.A.6, 1941), the court stated: "The enforcement of the subpoena is thus confided to the discretion of the District Court, which is to be judicially exercised. We think that the review in this case extends no further than the determination as to whether or not there was an abuse of its discretion." See also the concurring opinion of Mr. Justice Whittaker in NLRB v. Duval Jewelry Co., 357 U.S. 1, 8, 78 S.Ct. 1024, 2 L. Ed.2d 1097 (1958).

As distilled from their lengthy brief, appellants' position appears to be this. They concede that the information sought is within the inquisitional power of the Board to obtain. United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). They admit that these cases have limited the ancient prohibition against "fishing expeditions," see FTC v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696 (1924), because broad exercise of investigative power is necessary if the agencies are to fulfill the public interest purposes for which they were established. Morton Salt, supra, 640–643, 70 S.Ct. 357. They, however, contend that the General Counsel is, in essence, delegating the investigation to the union, and thus is acting beyond

this authority as the broad investigative power of the Board cannot be exercised by private litigants.[5] To support their position, appellants rely upon NLRB v. Kingston Trap Rock Co., 222 F.2d 299 (C.A.3, 1955). We agree that Kingston is dispositive of this argument; however, we interpret that case differently than do the appellants.

Although Kingston also involved a possible disclosure of subpoenaed information to the charging-party union, it is clearly distinguishable from the instant case, since it dealt with pre-complaint investigation while the present case involves post-complaint proof. This distinction is meaningful and could constitute a basis for our holding; however, we choose to rely upon Kingston to support affirmance, for, despite the aforementioned distinction, appellants' contentions here are strikingly similar to those advanced in that case. The appellants there urged that the subpoenas were burdensome and oppressive because "the material sought would be of great value to the complaining Union and would be used by other Unions against Kingston * * *." Supra at 302. The language employed by the court in summarily dismissing this argument has relevance here:

"* * * The astonishing contention that one may refuse to comply with a proper subpoena because of a self-conjured groundless suspicion that there is a 'danger' that a governmental employee will commit a wrongful act is brazen and insulting." Supra at 302.

In the instant case, the General Counsel proposed to use the union experts only to the extent required for the prosecution of the unfair labor practice charge and within the limitations of the district

5. Because of the disposition we make of this case, it is unnecessary for us to consider the Union's argument that as a charging party it is a party once a complaint has been issued and therefore has the same subpoena rights as the General Counsel or the respondents. See Marine Engineers' Beneficial Ass'n No. 13 v. NLRB, 202 F.2d 546 (C.A.3, 1953);

NLRB Rules & Regs., 29 C.F.R. §§ 102.8, 102.31(a); Administrative Decision of NLRB General Counsel, Case No. 408 (1952), 3 CCH Labor Law Reporter ¶ 5525.53. See also § 6(c) of the Administrative Procedure Act, 5 U.S.C. § 1005(c); Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

court's protective order. We cannot presume that the General Counsel or the experts subject to his direction will act unlawfully or in disregard of the order of the district court. We need not point out that their failure to do so will subject them to contempt.

■ The only remaining question is whether the district court abused its discretion in refusing to prohibit the use of union experts to examine and analyze the subpoenaed materials. The garment industry is recognized as perhaps the most complex in our nation;[6] in view of the violations that are alleged, there is no question that experts are necessary for the General Counsel to prosecute his case. The General Counsel contends that he has no expert sufficiently familiar with the intricacies of the garment industry to make these determinations. He finds that there are no such experts available in the country other than those who work for appellants, their competitors, or the union. Given these assertions which the appellants have neither fully denied nor can squarely refute, we cannot say that the district court has abused its discretion in refusing to prohibit the use of the union experts. The appellants' bland assertion that the General Counsel has failed to establish that there are no other experts available can carry no weight, for it seeks to impose upon the Board the burden of proving a negative. It is sufficient to note that appellants have made no attempt to prove their assertion.

No trial or administrative proceeding could pursue truth effectively if an absolute right to keep private matters confidential was conceded to all parties involved. Appellants' vague and unspecific contention that confidential matter will be revealed is similar in scope to the one made in FCC v. Schreiber, 381 U.S. 279,

85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). There, the Supreme Court found that an order of the district court forbidding disclosure of certain information to be invalid because made "without any showing that secrecy is justified." Supra at 297, 85 S.Ct. at 1471. There, as here, "the naked assertion of possible * * * injury does not establish that the * * * [district court] abused * * * [its] discretion in declining to accord confidential treatment." Supra at 298, 85 S.Ct. at 1472. On the basis of the similar "naked assertion" here, we are without power to provide greater protection than the district court, in the prudent exercise of its discretion, has chosen to grant.[7]

The order of the district court will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

This appeal arises out of a complaint by the Board on the charge of the union involved that respondents are guilty of unfair labor practice. Virtually all of respondents' records from 1961 to and including 1964 were subpoenaed by the Board at the request of the General Counsel for the hearing before the Trial Examiner. It developed that these were not intended at that time for specific trial use. The admitted purpose of having the records brought in was to permit the union attorneys, experts and other union personnel to examine them prior to trial at their private leisure in the hope of obtaining information desired by the union. That practice was objected to by respondents who have unqualifiedly agreed to turn all their records over to the Board and its staff for their private inspection prior to trial. The Board refused to agree to this on the ground that it had no experts of its own capable of

---

6. See the exception carved out of § 8(e) of the Labor Management Relations Act, 29 U.S.C. § 158(e). See 105 Daily Congressional Record 15951–15952, August 31, 1959.

7. FCC v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459 (1965), is the most recent Supreme Court pronouncement with regard to subpoenas issued by administrative agencies. We believe that many of the principles announced therein are applicable to the instant case.

making the records examination. Respondents offered to pay for any outside accountants and other people hired by the Board for the purpose. The astounding answer to this by the Board down into the present was and is that there is no one in the United States other than the union employees possessing the necessary expertise. The court opinion would broaden this to include also those who work for appellants and their competitors. However, at the argument of this appeal there was no such broadening of the expert group by either the attorney for the Board or the attorney for the union. Actually the suggestions that there were numerous accountants in the specialized field and that the vast reservoir of experts in the other various Government agencies might be called upon were brushed aside.

In any event the question of enforcement of the subpoena came before the district court. There the judge recognized that the procedure which would be permitted by the Board exposed the businesses of the respondents to the investigative ex parte scrutiny of the union for its private objectives. The court made some attempt to protect respondents but a reading of its order shows the utter failure to help at all. Union personnel are allowed full right to examine every record there is of respondents. They are prohibited from making copies or revealing the contents of documents or using the information they obtain for other than the trial of this cause. And who would ever know if they violated that prohibition? As a practical proposition there would be no locking of the barn at all, even after the horse was stolen.

These respondents do not question the investigatory authority of the Board or the latter's right to examine their entire operations generally or for a specific reason. The Board does not want that. It, the designated expert body for, inter alia, exactly that type of alleged management problem, refuses to designate its own people or to hire outside help or to obtain same from other federal sources.

It insists upon turning over its public investigative power to a private adversary litigant for the latter's own undisclosed motive. There is no statute or case law sanctioning that sort of performance. The subpoena involved is " * * * too broadly or oppressively drawn * * * " and is being enforced " * * * capriciously or oppressively, * * * ". Jackson Packing Co. v. N.L.R.B., 204 F.2d 842, 844 (5 Cir. 1953). The "protection" in the district court order is neither real nor apparent. The net result is abuse of the Board's high power which should be more care fully guarded. See also N. L. R. B. v. Anchor Rome Mills, Inc., 197 F.2d 447 (5 Cir. 1952); N. L. R. B. v. United Aircraft Corporation, 200 F.Supp. 48, 50 (D.C.Conn.1961); Adams v. Federal Trade Commission, 296 F.2d 861, 866 (8 Cir. 1961). Mr. Justice Jackson in the Morton Salt opinion, 338 U.S. 632, 651-652, 70 S.Ct. 357, 368 (1949), cited by the majority, while upholding the investigative powers of Federal administrative bodies (as to which there is no disagreement in this case) makes it very clear that corporations' rights under the Fourth Amendment extend " * * * to the orderly taking under compulsion of process" and that they should have protection from unlawful demands made in the name of public investigation. Again it should be emphasized that the respondent corporations before us seek no mandate to conduct their labor affairs in secret from the Board. All they want is to be protected from unwarranted invasion by the union concerned. In the Kingston Trap Rock opinion, 222 F.2d 229, 302 (3 Cir. 1955) we clearly held that transmittal of employer material to the union litigant by an employee of the Board would be "a wrongful act". In that suit there was only a self-conjured groundless suspicion of a danger that such an act would be committed. In this appeal we have that frankly conceded fact. The district court abused its discretion in making the order before us. That order should be reversed and these respondents given their proper day in court.