**NATIONAL LABOR RELATIONS BOARD, Plaintiff,**

v.

**Q-T SHOE MANUFACTURING CO., Inc. and Martin S. Nadler as President of Q-T Shoe Manufacturing Company, Inc., Defendants.**

**Civ. No. 140-67.**

United States District Court
D. New Jersey,
Civil Division.
Jan. 19, 1968.

Solomon I. Hirsh, N.L.R.B., Washington, D. C., Bernard L. Balicer, Regional Atty., N.L.R.B., Newark, N. J., for plaintiff.

Harry Zax, Paterson, N. J., for defendants; Bernard H. Fitzpatrick, New York City, Thomas Sheehan, Mineola, of counsel.

## OPINION

COOLAHAN, District Judge:

This matter came before the court upon the complaint of the National Labor Relations Board (hereinafter referred to as "Board"), seeking enforcement of a subpoena *duces tecum* directed to defendant Martin S. Nadler as President of Q-T Shoe Manufacturing Company, Inc., (hereinafter referred to as "Q-T Shoe"), or, in the alternative a mandatory injunction compelling defendant Q-T Shoe to produce the same material sought under the subpoena *duces*

*tecum.* Jurisdiction of this court is invoked under 28 U.S.C. § 1337 and Sections 9(c) and 11(2) of the National Labor Relations Act (hereinafter referred to as "the Act"), 29 U.S.C. §§ 159(c), 161(2).

The material facts are as follows: The Board is an administrative agency created under the Act and empowered and directed to administer the provisions of that statute, including investigation of questions pertaining to employee representation and representation elections under Section 9 of the Act, 29 U.S.C. § 159. Q-T Shoe is an employer engaged in the manufacture of shoes in interstate commerce within the meaning of the Act, 29 U.S.C. § 152(6), (7). The company's plant in question is located within this judicial district, at Paterson, New Jersey.

On September 20, 1966, Joint Council No. 3 of the United Shoe Workers of America AFL-CIO (hereinafter referred to as "Union"), petitioned the Board's regional office at Newark, New Jersey for a representation election to establish its alleged majority support by the employees at the Paterson plant, and to obtain certification as their collective bargaining representative. The regional office conducted an investigation of the petition and a hearing was held on the question of representation. Thereafter, on November 25, 1966, the Regional Director issued a Decision and Direction of Election pursuant to Section 9(c) (1) of the Act, 29 U.S.C. § 159(c) (1), which directed that an election be held for a unit of approximately 250 production and maintenance employees at the plant. The election was to be conducted by the Board and in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the applicable procedure and policies of the Board.

Pursuant to the Board's rule in Excelsior Underwear, Inc., 156 N.L.R.B. No. 111 (1966), the Board ordered Q-T Shoe to furnish it with a list of names and addresses of all employees eligible to vote in the election. On December

2, 1966, Q-T Shoe notified the Board's Regional Director that it would not comply. By letter of December 5, 1966, the Union notified the Director that it did not want to proceed to election until the information was furnished. Thereafter, the Regional Director issued the instant subpoena *duces tecum* on December 19, 1966, pursuant to Section 11(1) of the Act, 29 U.S.C. § 161(1).[1]

The subpoena directed the defendant Martin Nadler, President of Q-T Shoe, to produce and make available to the Board's regional office the company's personnel and payroll records, or alternatively a list of all employees eligible to vote in the election. It was personally served upon Mr. Nadler on December 19, 1966.

Although Section 11(1) of the Act, supra, and Section 102.31(b) of the Board's Rules and Regulations, 29 C.F.R. 102.31(b), provide for a period of 5 days after service of the subpoena within which any person served who wishes to object may petition the Board to revoke the subpoena, Nadler did not file such revocation petition within five days. Further, Nadler did not appear on December 28, 1966, the return date of the subpoena, and has at all times refused to produce the materials called for therein. Consequently, the Board seeks judicial enforcement by this court of the subpoena *duces tecum*, pursuant to Section 11(2) of the Act, 29 U.S.C. § 161(2).[2] The Board alleges that the information sought by the subpoena constitutes evidence relevant to a Board investigation within the meaning of Sections 11(1) and 11(2) and that therefore this court should direct the defendants' compliance.

As an alternative to the requested subpoena enforcement, the Board seeks a mandatory injunction directing divulgence of the names and addresses, on the ground that under 28 U.S.C. § 1337 this court has jurisdiction over actions brought by the Board to enforce valid election rules in effectuation of the policies of the Act.[3] It is the Board's

---

1. Section 11 of the Act, 29 U.S.C. § 161, provides that:

    For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by sections 159 [Section 9, "Representatives and Elections"] and 160 [Section 10, "Prevention of Unfair Labor Practices"] of this title—

    (1) The Board, or its duly authorized agents * * * shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. Within five days after the service of a subpena on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpena if in its opinion the evidence whose production is required does not relate to any matter under inevstigation, or any matter in question in such proceedings, or if in its opinion such subpena does not describe with sufficient particularity the evidence whose production is required.

2. Section 11(2), 29 U.S.C. § 161(2), provides in its pertinent parts:

    In case of contumacy or refusal to obey a subpena issued to any person, any district court of the United States * * *, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its members, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question * * *."

3. Section 1337 provides that:

    The district court shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

position that this provision vests this court with the power to grant it injunctive assistance in the Board's effort to carry out its authorized duty of supervising elections, despite the absence of any express grant of power to the Board to request injunctive relief for this purpose under the Board's enabling legislation.

■ The defendants have presented several separate defenses to the complaint, and, in addition, have moved to add as further defendants the approximately 250 employees whose addresses are sought by the Board. I am of the opinion, however, that the motion should be denied and the issues raised by the parties to the present proceeding should be resolved. In making such a ruling, the question for the court to determine is whether the employees "[claim] an interest relating to the subject of the action and [are] * * * so situated that the disposition of the action in [their] * * * absence may * * * as a practical matter impair or impede [their] * * * ability to protect that interest * * *." Rule 19, Federal Rules of Civil Procedure. Defendants contend that the disclosure of the employees' addresses arguably violates their right of privacy under the Due Process Clause of the Fifth Amendment of the Constitution, since to provide the Union with the addresses will subject them to the dangers of harassment and coercion in their homes. In disposing of the defendants' motion, however, it is not necessary for the court to reach the merits of the constitutional right asserted above, or the specific grievance from which the alleged constitutional right arises. Rather, the court need only inquire into the question of whether the disposition of the present action in the absence of the employees will effectively preclude them from protecting their interests later on. The court is of the opinion that this question must be answered in the negative. Whatever the outcome of the present proceeding, and whether or not disclosure of the employees' addresses to the Union in and of

itself violates the employees' right of privacy, the employees will be free in the future to petition the Board for a remedy to prevent any alleged harassment and coercion by the Union resulting from such disclosure. Defendants' motion is therefore denied.

My ruling above settles neither the questions whether the Board's act of supplying the Union with a list of the employees' addresses violates the employees' constitutional rights, nor whether the defendants have standing to assert such rights. These questions are taken up in a later portion of the court's opinion.

## I.

Prior to considering the Board's application for enforcement of its subpoena *duces tecum*, it would be helpful to briefly review the background of the *Excelsior* rule, the particular rule in dispute. As has been adverted to earlier, it emanates from the Board's decision in Excelsior Underwear Inc., 156 N.L.R.B. No. 111 (1966). Under the *Excelsior* rule, an employer must furnish the Regional Director with a list of names and addresses of all employees eligible to vote in the election, within 7 days after the Regional Director's approval of the election agreement or after the close of the determinative payroll period for eligibility purposes, whichever is later. The list is to be given to all parties, specifically including the union, in order to promote and maximize communication of election issues to the employees and also to aid in challenging possibly ineligible voters. The rule further provides that an employer's failure to file the required list of employees' names and addresses "shall be grounds for setting aside the election whenever proper objections are filed." *Excelsior Underwear*, supra at 5.

■ It is now essential to turn to the problem of whether a federal district court, pursuant to Section 11(2) of the National Labor Relations Act, 29 U.S.C. § 161(2), may enforce a Board-issued subpoena directing the employer to produce the list of names and addresses required by the *Excelsior* rule. The an-

swer to this question does not turn on the validity of the rule itself, but rather, on whether the information sought by the Board is "not plainly incompetent or irrelevant to any lawful purpose * *." Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943). "The control of the election proceeding, and the determination of the steps necessary to conduct that election fairly * * * [are] matters which Congress entrusted to the Board alone." NLRB v. Waterman S.S. Corp., 309 U.S. 206, 226, 60 S.Ct. 493, 503, 84 L.Ed. 704 (1940). The purpose behind the Board's passage of the *Excelsior* rule was to make certain that employees are able to exercise an informed and reasoned choice after hearing all sides of the question concerning the desirability of Union representation, and to facilitate the process of investigating challenges to voter eligibility. Keeping in mind the holding of the *Waterman* case, it cannot be said that the Board's purpose for seeking the information herein is an unlawful one.

Defendants contend, however, that the subpoena should not be enforced because it seeks information the disclosure of which is required by a rule which was not formulated in accordance with the rule-making requirements specified in Section 3(a) (3) and (4) of the Administrative Procedure Act, 5 U.S.C. §§ 552(a) (3), (4), 553. The short answer to this objection, however, is that the Administrative Procedure Act permits the Board to proceed by either rule-making or adjudication. See SEC v. Chenery Corp., 332 U.S. 194, 201–203, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Moreover, in determining whether a subpoena should be enforced under Section 11 of the National Labor Relations Act, the court is of the opinion that the preceding conclusion is not weakened by the fact that the *Excelsior* rule was given a prospective application by the Board.

Defendants further assert that the subpoena should not be enforced for the reason that the disclosure of the employees' names and addresses required by the *Excelsior* rule is an unlawful abridgment of the employees' right of privacy under the Fifth Amendment of the Federal Constitution. The court will assume, but does not decide, that the defendants have standing to raise this question on behalf of the employees.

The right of privacy has been the subject of very recent and prolonged debate. See, e. g., Lamont v. Comm'r of Motor Vehicles, 269 F.Supp. 880 (S.D.N.Y. 1967); Symposium on the Griswold Case and the Right of Privacy, 64 Mich.L.Rev. 197 (1965). The court's investigation of several authorities indicates that there is no decision squarely on point with the facts of the present case. The Board relies heavily on Martin v. City of Struthers, Ohio, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), for the proposition that, assuming that the Union intends to utilize the aforementioned list of names and addresses for the purpose of conducting door to door campaign solicitations, any interest the employees may have in preventing such a practice can only be preserved by their legally protected right to turn members of the Union away from their doors. The decision in Struthers, however, is inapposite. In that case, the Supreme Court struck down a local ordinance prohibiting door-to-door canvassing, on the ground that, on balance with the first amendment right relied upon by the defendant, the privacy right supported by the statute must fail. In the present case, the weighing to be done, in contrast, is between the privacy right and a statutorily based right given to labor unions to seek employee support, and the *Struthers* decision is no support for the plaintiff's position.

The decision in Breard v. City of Alexander, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1950), cited by the defendants, is not, in the court's opinion, an authority having any direct bearing on the resolution of the immediate issue. The *Breard* case involved an ordinance prohibiting commercial solicitation from door-to-door without previous permission of home owners. In upholding the constitutionality of the ordinance, the Supreme Court ruled merely that the com-

munity's attempt to restrict one form of commercial activity was a valid measure under the police power and not a violation of due process. There is no basis upon which it can be argued that the *Breard* opinion affords constitutional protection for the interest asserted on behalf of the employees in the present case.

Public Util. Comm'n of District of Columbia v. Pollak, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952), is more in point. There, the United States Supreme Court, considering the question of whether commercial radio broadcasting to captive audiences in publicly franchised buses and street cars was an unwarranted and unconstitutional intrusion upon the privacy of unwilling listeners who use public transportation, concluded that no right of privacy was violated. It is quite possible that the holding of this case precludes, *a fortiori*, any conclusion in the present case that the employees' right to privacy would be violated by the divulging of their names and addresses, for the captive circumstances faced by the employees in the present case are not comparable, from the point of view of *degree of captivity*, with those faced by the bus riders in Pollak, since the employees here have a legally enforceable right to remove unwanted intruders from their homes. On the other hand, it could be argued that the *quality* of the violation of the right to privacy is greater in the present case, where it is the security of the home which may be possibly violated, as opposed to the tranquility of the bus ride. There is no need, however, to finally determine the right of privacy question here, in view of the court's determination of the other issues before it, which will follow.

Having decided that the Board's issuance of the subpoena was lawful within the meaning of *Endicott Johnson*, supra, because it was based on a reasonable policy determination within the purview of the Board's powers, question still remains as to whether this court has jurisdiction pursuant to Section 11(2) of the Act, 29 U.S.C. § 161(2), to order the defendants to produce the previously referred to list of names and addresses. Resolution of this issue depends on whether, within the meaning of Section 11(1) of the Act, 29 U.S.C. § 161(1), the Board is seeking *"for the purpose of examination * * * evidence * * * that relates to any matter under investigation or in question."* A representation proceeding conducted by the Board pursuant to Section 9 of the Act, 29 U.S.C. § 159, is certainly an "investigation" within the meaning of Section 11(1), the object of which is to determine the appropriate bargaining unit for a given group of employees. Inland Empire Council etc. v. Millis, 325 U.S. 697, 707, 65 S.Ct. 1316, 89 L.Ed. 1877 (1944). The direction of an election is merely an intermediate step in the investigation, certification being the final and effective act. National Labor Relations Board v. International Bhd. of Elec. Workers, 308 U.S. 413, 414, 60 S.Ct. 306, 84 L.Ed. 354 (1939).

The Board argues that the employees' names and addresses are properly classified as evidence relating to a matter under investigation to the extent that the list will be utilized by the *Union* for the purpose of communicating election issues and handling challenges to voter eligibility. This is not so. Nowhere do Sections 11(1) and 11(2) of the Act authorize the Board to use its investigatory and subpoena powers for the sole purpose of transmitting information to certain parties to a representation proceeding, as required by the *Excelsior* rule. The plain language of Section 11(1) of the Act would appear to indicate that there must be some independent use made by the Board itself of evidence obtained pursuant to its investigatory powers under that section. Nor does the court regard FCC v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965), or NLRB v. Friedman, 352 F.2d 545 (3d Cir. 1965), as being dispositive of the issue. The facts of the present case are distinguishable from those presented in both the *Schreiber* and *Friedman* cases, in that here the Board is seeking to act as a

mere conduit of the information to the Union. Although the court is of the opinion that it is proper for the Board to have the names of all employees of Q-T Shoe, so that those entitled to vote be properly identified, judicial enforcement of the Board's subpoena in the present case would effectively result in the enforcement of the *Excelsior* rule itself; it was certainly not the intention of Congress under Section 11(2) to confer jurisdiction upon federal courts for the disguised purpose of enforcing the Board's rules of decision. Whether the *Excelsior* rule should be enforced is a separate question which is governed by other considerations, to which the court presently turns.

## II.

In the alternative to its request for subpoena enforcement, the Board seeks a mandatory injunction directing the defendants to file the list of employees' names and addresses with the Regional Director, in compliance with the Board's *Excelsior* rule. Jurisdiction of the court is invoked under 28 U.S.C. § 1337, which vests district courts with jurisdiction "of any civil action or proceeding" arising under any Act of Congress "regulating commerce or protecting trade and commerce against restraints and monopolies." The Board argues that this provision empowers this court to issue an injunction, enforcing the *Excelsior* rule, despite the absence of any express grant of district court jurisdiction under the Board's enabling act. That the present suit is a "civil action or proceeding" arising under an Act of Congress "regulating commerce," cannot, of course, be denied. Capital Service Inc. v. NLRB, 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954). The pivotal question to be determined, however, is whether provisions of the Act authorizing federal courts to enforce certain orders issued by the Board themselves deprive this court of jurisdiction of the present suit. Stated differently, does the Act itself impliedly preclude the judicial enforcement of decisions rendered by the Board pursuant to its power under Section 9 to conduct

representation proceedings? This requires some discussion.

Under the Act, the Board is given the task of performing two principal functions. The first, under Section 9, is the certification of an appropriate bargaining unit of employees; the second, under Section 10, is the prevention of unfair labor practices enumerated in Section 8. Section 9(c) authorizes the Board to conduct an investigation upon the filing of a representation petition, and, if the Board finds that a question of representation exists, to direct an election by secret ballot and certify the results. In addition, the Board is responsible for the implementation of those steps necessary to conduct the election. See NLRB v. Waterman S.S. Corp., supra. Section 9, complete in itself, contains no provision for the court enforcement of a Board order issued pursuant to that section. Section 9(d) states, however, that whenever an order of the Board is made pursuant to Section 10(c) directing any person to cease an unfair practice, and there is a petition for enforcement of the order by a court, the Board's "certification and the record of such investigation" is to be included in the transcript of the entire record required to be filed under Section 10(e), and the decree of the court enforcing, modifying, or setting aside the order of the Board is to be made and entered upon the pleadings, testimony, and proceedings set forth in the transcript.

The statutory procedure for the prevention of unfair labor practice is found in Section 10 of the Act. Section 10(a) authorizes the Board to prevent persons from engaging in unfair labor practices. Section 10(b) lays down the procedure by the Board when any person is charged with engaging in an unfair labor practice. If, as a result of the proceedings conducted pursuant to Section 10(b), the Board is of the opinion that the person so charged has engaged in an unfair labor practice, Section 10(c) empowers the Board to issue an order directing that person to cease the particular practice. Section 10(e) is a provision

which authorizes the Board to petition the appropriate federal court of appeals for the enforcement of its order prohibiting an unfair, labor practice.

█ Whether this court has jurisdiction to enforce the Board's *Excelsior* rule depends on the construction and meaning to be given to Sections 9(d) and 10(e) of the Act. A fair reading of these two sections leads the court to conclude that Congress has authorized federal courts to enforce Section 9 orders of the Board only where such an order serves as the basis for the court enforcement of a Board order restraining an unfair labor practice. This follows implicitly from the fact that: 1) only Section 10 of the Act permits the Board to seek court enforcement of its orders; 2) Section 9 orders *have* been made judicially enforceable, under the Act, when they are part of a record under Section 10, and sought to be enforced for the purpose of preventing unfair labor practices. One can only conclude, in attempting to glean congressional intent in the case of a thoroughly written and far-reaching statute such as the National Labor Relations Act, that Congress meant what it said, and only what it said, and intended to exclude what it did not say. Thus, enforcement of the *Excelsior* rule can only occur after it has been properly determined by the Board that the refusal by the defendant to provide the Union with a list of its employees' names and addresses constitutes an unfair labor practice under Section 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1).

█ The Board argues, however, that it should not at this time be compelled to find that such a refusal by the defendants violates Section 8(a) (1) of the Act. More specifically, it insists that the standards evolved by the Board for purposes of the regulation of elections under Section 9 differ considerably from those standards utilized to administer the unfair labor practice provisions of the Act. Thus, the Board contends that the defendants' non-compliance with the *Excelsior* rule, while improper conduct during the pendency of a representation proceed-

ing, might not be conduct sufficient to constitute an unfair labor practice. Assuming the correctness of this argument, I am of the opinion that it should be addressed to Congress and not to this court. The distinction urged by the Board does not appear to be one which Congress has recognized under Sections 9(d) and 10(e) of the Act. These sections, as interpreted by this court, confer jurisdiction upon Federal Courts of Appeals to enforce a Board order regulating the conduct of a representation proceeding only insofar as it forms the basis of an enforceable order issued pursuant to Section 10(c) of the Act.

I am therefore of the opinion that this court is without jurisdiction to enforce the *Excelsior* rule, and plaintiff's request for a mandatory injunction is denied.

Let an appropriate order be submitted.