**NATIONAL LABOR RELATIONS BOARD, Appellant,**

v.

**Q-T SHOE MANUFACTURING CO., Inc., and Martin S. Nadler as President of Q-T Shoe Manufacturing Company, Inc.**

**No. 17203.**

United States Court of Appeals
Third Circuit.

Argued Jan. 10, 1969.

Decided April 11, 1969.

---

2. We are of the view that United States v. Driscoll, 399 F.2d 135 (2 Cir. 1968) should be limited strictly to its own facts.

**1248**

Solomon I. Hirsh, N. L. R. B., Washington, D. C., for appellant (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Robert M. Lieber, N. L. R. B., on the brief).

Thomas Sheehan, Murphy & Sheehan, Mineola, N. Y., for appellee.

Before BIGGS, FORMAN and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of New Jersey[1] dismissing the action of the appellant National Labor Relations Board against appellees Q–T Shoe Manufacturing Company, Inc. ("Company") and Martin S. Nadler, president of the Company. The Board had sought enforcement of a subpoena *duces tecum* or, alternatively, the issuance of a mandatory injunction to compel production of certain information hereinafter specified.

On September 20, 1966, Joint Council No. 13, United Shoe Workers of America, AFL–CIO ("Union") filed a petition with the Board's regional office in Newark, New Jersey, seeking a representation election and certification as the collective bargaining representative of the Company's production and maintenance employees at its plant in Paterson, New Jersey. Following a hearing, the Board's Regional Director on November 25, 1966 issued a Decision and Direction of Election pursuant to Section 9(c) (1) of the National Labor Relations Act[2] ("Act"), directing that an election be held for the unit of approximately 250 employees.

1. NLRB v. Q–T Shoe Mfg. Co., 279 F. Supp. 1 (D.N.J.1968).

2. 29 U.S.C. § 159(c) (1) (1964).

Additionally, the Company was directed to file with the Regional Director a list of the names and addresses of all employees eligible to vote in the election within seven days after issuance of the Decision and Direction of Election, in accordance with the Board's rule announced in *Excelsior Underwear, Inc.*[3]

On December 2, 1966 the Company informed the Regional Director that it would not supply employee addresses, although a list of names was furnished. Since the Union did not wish to proceed with the election in the absence of full compliance with the *Excelsior* rule, the Regional Director postponed the election and on December 19, 1966 issued a subpoena *duces tecum,* pursuant to Section 11(1) of the Act,[4] directing appellee Nadler to produce at the Board's regional office the Company's books and records containing the names and addresses of all employees or, in lieu thereof, a list containing this information to be verified by Board agents. Mr. Nadler did not appear on the return date of the subpoena and persisted in his refusal to disclose the material in question, whereupon the Board sought judicial relief in the District Court.

It was the conclusion of the District Court that it was without jurisdiction either to enforce the subpoena under Section 11(2)[5] of the Act or to issue a mandatory injunction compelling production under 28 U.S.C. § 1337.[6] Essentially, the court held that if it were to grant the requested relief, it would actually be enforcing the *Excelsior* rule itself; such enforcement would be authorized only

"after it has been properly determined by the Board that the refusal by the defendant to provide the Union with a list of its employees' names and addresses constitutes an unfair labor practice under Section 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1)."[7]

3. 156 NLRB 1236 (1966).

4. 29 U.S.C. § 161(1) : "The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. Within five days after the service of a subpena on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subpena does not describe with sufficient particularity the evidence whose production is required. Any member of the Board or any agent or agency designated by the Board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence. Such attendance of witnesses and the production of such evidence may be required from any place in the United States or any Territory or possession thereof, at any designated place of hearing."

5. 29 U.S.C. § 161(2) : "In case of contumacy or refusal to obey a subpena issued to any person, any district court of the United States or the United States courts of any Territory or possession, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question ; and any failure to obey such order of the court may be punished by said court as a contempt thereof."

6. 28 U.S.C. § 1337: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

7. 279 F.Supp. at 8.

On appeal, it is contended by the appellees that the substantive validity of the *Excelsior* rule was not in dispute before the District Court, and consequently is not an issue here. While it is true that the court did not explicitly decide whether disclosure of the employees' names and addresses would constitute an invasion of their right to privacy,[8] it is apparent that a definitive decision thereon was considered unnecessary in the light of the court's ultimate determination that it was in any event without jurisdiction to grant the relief sought by the Board. A perusal of the appellees' answer in the District Court reveals that they did in fact assert, as their second affirmative defense, that their employees' right to privacy would be infringed by compliance with the *Excelsior* rule.

■ Although we conclude that the question is properly before us, little comment is merited in its resolution. Even on the dubious assumption that the Company has standing to raise its employees' rights in this context, it is clear that none of their rights is infringed by the mere *opportunity* afforded a union to solicit their support. The primary stated purpose of the rule announced in the *Excelsior* case was to insure that the electorate in any Board representation proceeding would be fully informed and have access to the views of *all* parties involved. If there is any abuse of the rule in a given situation, it is readily apparent that the employee retains the right to insulate himself against offensive solicitation.[9] The mere *possibility* of such harassment is surely not a sufficient ground for invalidating a rule designed to achieve greater enlightenment with respect to labor election issues, and it is noteworthy that every court which has passed on the issue has held the *Excelsior* rule to be a legitimate exercise of the Board's jurisdiction over representation proceedings.[10]

■ While it is not strenuously urged on this appeal, appellees raise as an alternative ground for the affirmance of the District Court's decision the alleged lack of compliance with Sections 3(a) (3) and (4) of the Administrative Procedure Act[11] in the adoption of the *Excelsior* rule. The argument is that since the rule was not applied to the parties in the cases which gave rise to its formulation, and would only become effective 30 days from the date of the decision, the Board in *Excelsior* was not engaging in actual "adjudication" but rather was proceeding by way of rule-making. This being the case, it is contended, the Board was obligated to comply with the notice and publication requirements of Section 4, and the failure to do so renders the *Excelsior* rule a nullity not capable of enforcement by a federal court.

8. "There is no need, however, to finally determine the right of privacy question here, in view of the court's determination of the other issues before it * * *" Id. at 6.

9. In this connection it hardly appears likely that union agents will unduly harass any employee, since their objective is to obtain support rather than arouse hostility.

10. See NLRB v. Beech-Nut Life Savers, Inc., 406 F.2d 253 (2 Cir., Dec. 3, 1968); NLRB v. J. P. Stevens & Co., No. 13223 (4 Cir., March 25, 1969); NLRB v. Hanes Hosiery Div.—Hanes Corp., 384 F.2d 188 (4 Cir. 1967), cert. denied, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1141 (1968); Groendyke Transp., Inc. v. Davis, 406 F.2d 1158 (5 Cir., Jan. 2, 1969); Howell Ref. Co. v. NLRB, 400 F.2d 213 (5 Cir. 1968); NLRB v. Rohlen, 385 F.2d 52 (7 Cir. 1967); British Auto Parts, Inc. v. NLRB, 405 F.2d 1182 (9 Cir., Dec. 17, 1968); NLRB v. Wolverine Indus. Div., 64 LRRM 2187 (E.D.Mich.1967); Swift & Co. v. Solien, 274 F.Supp. 953 (E.D.Mo.1967); NLRB v. Cone Mills Corp., 68 LRRM 2980 (D.S.C.1968). In Wyman-Gordon Co. v. NLRB, 397 F.2d 394 (1 Cir. 1968), the court, although not reaching the question, nevertheless stated that it was not impressed by the arguments advanced in challenging the substantive validity of *Excelsior*.

11. 5 U.S.C. §§ 552(a) (3), 553 (1964).

The District Court gave short shrift to this argument,[12] but it has assumed substantially more significance in the light of the subsequent First Circuit decision in Wyman-Gordon Company v. NLRB,[13] holding the *Excelsior* rule to have been improperly promulgated. A divided court there reasoned:

"In *Excelsior,* however, the Board did not decide a case between party and party, or, more exactly, it decided a case one way, and took occasion to lay down a future rule the other way. *Chenery* [SEC v. Chenery Corporation, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)] in no fashion suggests approval of this. On the contrary, to the extent the Board was not deciding a case, this is precisely where Congress had instructed it as to the procedure it should adopt. The Board has chosen to disregard Congress." [14]

Other courts have explicitly rejected the *Wyman-Gordon* rationale,[15] and notable among these decisions is that of the Court of Appeals of the Second Circuit in NLRB v. Beech-Nut Life Savers, Inc.[16]

In the course of its opinion the Second Circuit stated that it would have followed the *Wyman-Gordon* decision if the *Excelsior* rule had been announced in an opinion where the facts and issues in dispute were totally unrelated to the new statement of policy. In the absence of such circumstances, the court concluded that administrative agencies such as the Board were empowered to determine for themselves whether to proceed by rule-making or adjudication. The fact that the *Excelsior* rule was to have only prospective application was not regarded as having any effect on the judicial nature of the Board's proceedings, for the court reasoned that fairness to the parties might well entail the allowance of sufficient time to alter their conduct to accord with the new standard.[17]

This court considers the reasoning of the Second Circuit to be more persuasive in this respect. It is to be noted that the Administrative Procedure Act defines "adjudication" simply as "agency process for the formulation of an order."[18] Clearly, the Board's decision in *Excelsior* was in conformance with this broad definition, and no case has been found which invalidates agency action on the ground that a new rule is to have only a prospective application.[19] Tradi-

12. "The short answer to this objection, however, is that the Administrative Procedure Act permits the Board to proceed by either rule-making or adjudication. See SEC v. Chenery Corp., 332 U.S. 194, 201–203, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Moreover, in determining whether a subpoena should be enforced under Section 11 of the National Labor Relations Act, the court is of the opinion that the preceding conclusion is not weakened by the fact that the *Excelsior* rule was given a prospective application by the Board." 279 F.Supp. at 5.

13. 397 F.2d 394 (1 Cir.), cert. granted, 393 U.S. 932, 89 S.Ct. 301, 21 L.Ed.2d 268 (1968). The case was argued in the Supreme Court on March 3, 1969. 37 U.S.L.W. 3334 (U.S. March 11, 1969).

14. 397 F.2d at 397.

15. NLRB v. Beech-Nut Life Savers, Inc., 406 F.2d 253 (2 Cir., Dec. 3, 1968); Groendyke Transp., Inc. v. Davis, 406 F.2d 1158 (5 Cir., Jan. 2, 1969); Howell Ref. Co. v. NLRB, 400 F.2d 213,

216 n. 8 (5 Cir. 1968); British Auto Parts, Inc. v. NLRB, 405 F.2d 1182 (9 Cir., Dec. 17, 1968); NLRB v. Cone Mills Corp., 68 LRRM 2980, 373 F.2d 595 (D.S.C.1968).

16. 406 F.2d 253 (2 Cir., Dec. 3, 1968).

17. "There is nothing anomalous about a prospective change in a legal rule occurring in an adjudicatory setting. In all fairness sufficient time may be required to permit persons to change systems and modes of dealing with one another." Id. at 258.

18. 5 U.S.C. § 551(7) (1964).

19. In Rockwell Mfg. Co. v. NLRB, 330 F.2d 795, 798 (7 Cir.), cert. denied, 379 U.S. 890, 85 S.Ct. 161, 13 L.Ed.2d 94 (1964), the Seventh Circuit specifically held prospective application of a Board rule "was neither arbitrary nor capricious. The Board may fix the effective date of its rule changes and apply its standards prospectively." By way of analogy, the Supreme Court in Great Northern Ry.

tionally, the courts have been more concerned with agency decisions having a *retroactive* effect, although these have generally been sustained.[20] Implicit in each of these cases, however, has been the idea that a ruling having only an *in futuro* impact would merit judicial enforcement, since the possibilities of unfairness to the parties and lack of adequate notice would then be removed.

■■ The overriding principle to be followed in cases of this nature was established by the Supreme Court in SEC v. Chenery Corporation.[21] It was there held that "the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency."[22] Since the Court also concluded that it was generally within the discretion of the agency whether to apply its rules *retroactively*, it necessarily follows that in a given factual context prospective application, especially where the equitable consideration of fairness to the parties is involved, is permissible. The circumstances surrounding the adoption of the *Excelsior* rule certainly do not constitute grounds for holding otherwise in this case.[23]

■■ The final issue to be considered is that which largely forms the basis for the District Court's decision, namely, whether a subpoena *duces tecum* compelling production of an *Excelsior* list of names and addresses is capable of judicial enforcement. Section 11(2) of the National Labor Relations Act[24] provides for enforcement of Board subpoenas issued in accordance with the requirements of Section 11(1), and thus the proper inquiry in each case is whether the Board is seeking "evidence * * * that relates to any matter under investigation or in question." Although the District Court concluded that a representation proceeding is an "investigation" within the meaning of this section, it nevertheless held that the information called for by an *Excelsior* list could not properly be considered as "evidence" connected with such investigation, since the Board was simply acting as an intermediary on behalf of the Union, the party for whose benefit that information was in fact elicited. The District Court reasoned:

"Nowhere do Sections 11(1) and 11(2) of the Act authorize the Board to use its investigatory and subpoena powers for the sole purpose of trans-

Co. v. Sunburst Oil & Ref. Co., 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360 (1932), sanctioned a *state court* decision designed to have prospective effect only: "A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating, too broadly * * *, that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted."

20. *See, e. g.*, SEC v. Chenery Corp., 332 U.S. 194, 202–203, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); City of Chicago v. FPC, 128 U.S.App.D.C. 107, 385 F.2d 629, 642–643 (1967), cert. denied sub nom. Public Service Comm'n of Wisconsin v. FPC, 390 U.S. 945, 88 S.Ct. 1028, 19 L.Ed.2d 1133 (1968); Leedom

v. International Bhd. of Elec. Workers, 107 U.S.App.D.C. 357, 278 F.2d 237, 240–243 (1960); NLRB v. APW Prods. Co., 316 F.2d 899, 905 (2 Cir. 1963); Optical Workers' Union Local 24859 v. NLRB, 227 F.2d 687, 691 (5 Cir. 1955), cert. denied, 351 U.S. 963, 76 S.Ct. 1027, 100 L.Ed. 1484 (1956). But see NLRB v. Guy F. Atkinson Co., 195 F.2d 141 (9 Cir. 1952).

21. 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

22. Id. at 203, 67 S.Ct. at 1580.

23. This disposition of the issue makes it unnecessary to pass upon the alternative argument advanced by the Board to the effect that the *Excelsior* rule is procedural, not substantive, and thus does not have to comply with the provisions of the Administrative Procedure Act. For a judicial statement of this position, see the dissenting opinion in *Wyman-Gordon*, 397 F.2d at 398.

24. 29 U.S.C. § 161(2). See note 5 *supra*.

mitting information to certain parties to a representation proceeding, as required by the *Excelsior* rule. The plain language of Section 11(1) of the Act would appear to indicate that there must be some independent use made by the Board itself of evidence obtained pursuant to its investigatory powers under that section. Nor does the court regard FCC v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed. 2d 383 (1965), or NLRB v. Friedman, 352 F.2d 545 (3d Cir. 1965), as being dispositive of the issue. The facts of the present case are distinguishable from those presented in both the *Schreiber* and *Friedman* cases, in that here the Board is seeking to act as a mere conduit of the information to the Union. Although the court is of the opinion that it is proper for the Board to have the names of all employees of Q–T Shoe, so that those entitled to vote be properly identified, judicial enforcement of the Board's subpoena in the present case would effectively result in the enforcement of the *Excelsior* rule itself; it was certainly not the intention of Congress under Section 11(2) to confer jurisdiction upon federal courts for the disguised purpose of enforcing the Board's rules of decision." [25]

We are in agreement with the District Court to the extent that it held a representation proceeding to be an investigation within the purview of the Act.

In reaching its ultimate conclusion, however, the court seemingly overlooked the Supreme Court's admonition that "[t]he control of the election proceeding, and the determination of the steps necessary to conduct that election fairly were matters which Congress entrusted to the Board alone." [26] The information sought by an *Excelsior* list, while concededly of primary benefit to the unions striving to be certified as collective bargaining representatives of groups of employees, clearly facilitates the equitable resolution of election issues, and in this sense such information is "used" by the Board. Also noteworthy is the statement within the *Excelsior* opinion itself, wherein the Board announced as an important secondary purpose of the new rule a desirable reduction in the number of voter eligibility challenges.[27] In sum, it is apparent that the *Excelsior* rule makes a significant contribution to the Board's control over the election process, and in such posture the list of names and addresses should be regarded as "evidence" in connection with a particular kind of "investigation." Since that evidence is "not plainly incompetent or irrelevant" [28] to legitimate Board functions, the subpoena calling for its production should have been enforced.

In so holding, the decision of this court is in substantial accord with several other judicial holdings, both prior and subsequent to the District Court's determination in this case.[29] In light of this dis-

---

25. 279 F.Supp. at 6–7. See Comment, Enforcement of the Excelsior Rule in the District Courts, 116 U.Pa.L.Rev. 1434, 1439–1440 (1968).

26. NLRB v. Waterman Steamship Corp., 309 U.S. 206, 226, 60 S.Ct. 493, 503, 84 L.Ed. 704 (1940).

27. "Furthermore, bona fide disputes between employer and union over voting eligibility will be more susceptible of settlement without recourse to the formal and time-consuming challenge procedures of the Board if such disputes come to light early in the election campaign rather than in the last few days before the election when the significance of a single vote is apt to loom large in the parties'

calculations. Thus the requirement of prompt disclosure of employee names and addresses will further the public interest in the speedy resolution of questions of representation." 156 NLRB at 1243.

28. Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509, 63 S.Ct. 339, 87 L.Ed. 424 (1943).

29. E. g., NLRB v. Hanes Hosiery Div.— Hanes Corp., 384 F.2d 188, 191–192 (4 Cir. 1967), cert. denied, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1141 (1968); NLRB v. Rohlen, 385 F.2d 52, 54–57 (7 Cir. 1967); British Auto Parts, Inc. v. NLRB, 405 F.2d 1182 (9 Cir., Dec. 17, 1968); NLRB v. Wolverine Indus. Div.,

**1254**

position we do not reach the question whether the same information could be obtained by means of a mandatory injunction under 28 U.S.C. § 1337.[30]

Accordingly, the judgment of the United States District Court for the District of New Jersey of February 6, 1968 will be reversed and the case will be remanded with instructions to enforce compliance with the subpoena *duces tecum* of the National Labor Relations Board as prayed for in its complaint.

64 LRRM 2187, 2188 (E.D.Mich.1967); Swift & Co. v. Solien, 274 F.Supp. 953, 960 (E.D.Mo.1967); *cf.* NLRB v. Friedman, 352 F.2d 545 (3 Cir. 1965); NLRB v. C.C.C. Associates Inc., 306 F.2d 534 (2 Cir. 1962); Cudahy Packing Co. v. NLRB, 117 F.2d 692 (10 Cir. 1941).

30. In NLRB v. Hanes Hosiery Div.— Hanes Corp., 384 F.2d 188, 192 (4 Cir. 1967), cert. denied, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1141 (1968); NLRB v. Wolverine Indus. Div., 64 LRRM 2187, 2188 (E.D.Mich.1967); Swift & Co. v. Solien, 274 F.Supp. 953, 960 (E.D.Mo.1967); and NLRB v. Daniel Constr. Co., 69 LRRM 2206 (D.S.C.1968), 28 U.S.C. § 1337 has been held to be an alternative basis for district court jurisdiction.