**NATIONAL LABOR RELATIONS BOARD, Applicant,**

v.

**NORTH AMERICAN VAN LINES, INC.; North American Van Lines Commercial Transport Advisory Council, Party of Interest, Respondent.**

**Civ. No. F 85–166.**

United States District Court, N.D. Indiana, Fort Wayne Division.

June 18, 1985.

Ralph R. Tremain, Acting Regional Atty., N.L.R.B., Indianapolis, Ind., for applicant.

Duane C. Aldrich and Richard R. Carlson, Kilpatrick & Cody, Atlanta, Ga., Thomas A. Coz, North American Van Lines, Inc., Fort Wayne, Ind., for respondents.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the National Labor Relations Board's ("NLRB") application for an order requiring the respondent ("North American") to comply with a subpoena duces tecum issued by the NLRB pursuant to § 11(1) of the Labor Management Relations Act, 29 U.S.C. § 161(1). For the following reasons, the application will be granted, and the documents ordered produced.

This application arises out of an administrative proceeding between the NLRB and North American. This underlying proceeding involves a complaint that North American engaged in an unfair labor practice by dominating and interfering with the formation of the North American Van Lines Commercial Transport Advisory Council, and by rendering unlawful assistance and support to that Council. The NLRB contends that these actions violated §§ 8(a)(1) and (2) of the National Labor Relations Act, 29 U.S.C. § 151, et seq.

The administrative hearing on the complaint began on January 15, 1985 (Joint Stipulation, ¶ 8). Most of the evidence in the NLRB's case-in-chief was directed at showing that the approximately 2,400 owner-operators in North American's Commercial Transport Division were employees under the National Labor Relations Act because North American exercised employer-type control over the owner-operators through its counselors and dispatchers. (Id., ¶ 14). Counsel for the General Counsel of the NLRB rested his case-in-chief on March 19, 1985, and North American began its defense that same day. (Id., ¶ 16).

On March 22, 1985, Counsel for the General Counsel served the disputed subpoena on North American, requesting five different sets of materials, including, in item 4, copies of "all written evaluations of counselors and dispatchers prepared during the period January 1, 1984 to date." North American filed a Petition to Revoke the Subpoena, which was ultimately denied by the Administrative Law Judge. North American produced three of the five sets of materials, reported that no documents satisfied a fourth, but refused to produce the written evaluations (Id., ¶¶ 19, 23). Counsel for the General Counsel rested his case in rebuttal on March 29, 1985, subject to his right to present evidence concerning the written evaluations should the subpoena be enforced. (Id., ¶ 22). In essence, the procedural posture of the administrative hearing is that the proceeding is over but for any further rebuttal that Counsel for the General Counsel may wish to put on after receiving the subpoenaed evaluations.

North American asserts two reasons for denying the application. The first rationale is relevance. North American argues that an administrative subpoena must seek documents or information which is "relevant;" it urges denial of the application because the documents sought cannot (in North

American's eyes) produce evidence which would be proper for the NLRB's rebuttal purposes, and therefore is "irrelevant." The second rationale offered involves claims of privacy and confidentiality. North American asserts that production of the written evaluations will violate the privacy interests of employees, and jeopardize the flow of confidential information within the corporation. The court will consider each of these arguments in turn.

The power of the NLRB to issue subpoenas is set forth in § 11(1) of the Labor Management Relations Act, 29 U.S.C. § 161(1):

> The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceedings or investigation requested in such application.

If a party refuses to obey a subpoena, the Board may apply for enforcement of the subpoena to the district court of the jurisdiction where the inquiry is being held or where the refusal occurred. Section 11(2), 29 U.S.C. § 161(2).

A district court's review of an NLRB subpoena is "extremely limited," "extremely narrow," and of "a summary nature." *NLRB v. G.H.R. Energy Corp.,*

707 F.2d 110, 113 (5th Cir.1982); *NLRB v. Frederick Cowan and Co., Inc.,* 522 F.2d 26, 28 (2d Cir.1975). *See also EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 310 (7th Cir.1981); *EEOC v. Suburban Transit System, Inc.,* 538 F.Supp. 530, 532 (N.D.Ill. 1982). Generally, a court should order enforcement of an administrative agency's subpoena if three elements are present: (1) the investigation for which the subpoena is issued is "within the agency's authority," *Bay Shipbuilding,* 668 F.2d at 310; *NLRB v. International Medication Systems, Ltd.,* 640 F.2d 1110, 1114 (9th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 134 (1982), or is "within the jurisdiction of the Board," *NLRB v. Martins Ferry Hospital Ass'n,* 649 F.2d 445, 448 (6th Cir.), *cert denied,* 454 U.S. 1083, 102 S.Ct. 638, 70 L.Ed.2d 617 (1981); *NLRB v. Dutch Boy, Inc., Glow Lite Div.,* 606 F.2d 929, 932 (10th Cir.1979); (2) the subpoena is not "too indefinite," *Bay Shipbuilding,* 668 F.2d at 310, and the matter subpoenaed is described with "sufficient particularity," *G.H.R. Energy Corp.,* 707 F.2d at 113; and (3) the information sought is "reasonably relevant." *Bay Shipbuilding,* 668 F.2d at 310; *International Medication,* 640 F.2d at 1114.[1]

North American does not seriously contest the first two elements, and the court is convinced that the investigation for which the subpoena has issued is within the jurisdiction of the NLRB, and the subpoena is definite and particular. The focus of the argument here is the requirement that the information sought be "reasonably relevant"; North American contends that the written evaluations cannot provide any evidence which would properly rebut its de-

---

1. Some courts have spoken of an element of "improper purpose on the part of the government." *See Bay Shipbuilding,* 668 F.2d at 311; *United States v. Kis,* 658 F.2d 526, 544 (7th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982); *NLRB v. Interstate Dress Carriers, Inc.,* 610 F.2d 99, 106–107 (3d Cir.1979). However, the *Bay Shipbuilding* court, quoting *Interstate Dress Carriers,* viewed the inquiry into improper purpose as whether the subpoenaed party can come forward "with facts suggesting that the subpoena is intended solely to serve purposes outside the purview of

the jurisdiction of the issuing agency." 668 F.2d at 311. This indicates that the element of "improper purpose" is really an inquiry into the agency's jurisdiction, and therefore falls within element (1) listed above. Although North American strenuously argues that Counsel for the General Counsel's attempt to "reopen his case-in-chief" constitutes an "improper purpose," the court concludes that the improper purpose inquiry is limited to the NLRB's jurisdiction, and the issue of reopening the NLRB's case-in-chief is more properly addressed in the court's analysis of element (3) above.

fense, and thus the evidence would be "irrelevant" for proper rebuttal purposes.

The premise behind North American's relevancy argument is that the "reasonably relevant" element above can be translated as "relevant in an evidentiary sense." North American seeks to make an objection as to the use of the evidence in the administrative proceeding; it argues that the evidence will not serve to rebut the testimony during its case-in-chief, so that the evidence cannot properly be admitted at this point in the proceeding. In short, North American seeks to block enforcement of the subpoena because the documents subpoenaed cannot lead to "relevant," admissible evidence.

■ The court concludes that element (3) above does not use "relevant" in an evidentiary sense for several reasons. First, if the courts setting out the element intended to speak of "relevance" in the context of evidence, it makes no sense to say that the information sought must be *"reasonably"* relevant. Evidence is relevant or irrelevant, and relevant evidence is not viewed as having degrees of "reasonableness." Second, many courts which have considered the enforcement of summons have not used the "reasonably relevant" language, but have instead required that the evidence sought "relate to or touch the matter under investigation," *G.H.R. Energy Corp.,* 707 F.2d at 113; *Dutch Boy, Inc.,* 606 F.2d at 932; *NLRB v. Williams,* 396 F.2d 247, 249 (7th Cir.1968), or that the agency seeks information "not plainly incompetent or irrelevant *to any lawful purpose." Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943) (emphasis added); *NLRB v. Q–T Shoe Mfg. Co.,* 409 F.2d 1247, 1253 (3d Cir.1969). This language suggests that courts view the relevancy requirement *in terms of the investigation* (i.e., the information sought is relevant to the investigation) as opposed to viewing it in terms of evidentiary relevance. This conclusion is reinforced by the Seventh Circuit's opinion in *NLRB v. Rohlen,* 385 F.2d 52 (7th Cir. 1967):

... if the material subpoenaed touches a matter under investigation, it is within the scope of section 11(2) even though the material may not be considered "evidence" as the term is employed in the courtroom.

*Id.* at 57. *See NLRB v. Beech Nut Life Savers, Inc.,* 406 F.2d 253, 259 (2d Cir. 1968), *cert. denied,* 394 U.S. 1012, 89 S.Ct. 1624, 23 L.Ed.2d 38 (1969) (term "evidence" as used in 29 U.S.C. § 161 "has not been limited to formal proof of disputed facts presented in a trial-type hearing"). *See also NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 768, 89 S.Ct. 1426, 1431, 22 L.Ed.2d 709 (1969).

■ Finally, one court has addressed the issue of whether a subpoenaed party may block enforcement of a subpoena by contesting the evidentiary question of whether the evidence subpoenaed will be relevant in the administrative proceeding. In *NLRB v. Goodyear Tire & Rubber Co.,* 36 F.Supp. 413 (N.D.Ohio 1940), the court stated:

Clearly the Congress never intended to permit the controversy over reception of evidence to be removed or transferred to the District Court as an original suit merely upon the application of the Board for an order requiring compliance with its subpoena.

. . . . .

I do not think that jurisdiction to determine the relevancy of evidence sought by the Board is implicit in a grant of jurisdiction to issue an order requiring obedience to the Board's subpoena to produce evidence touching the matter under investigation or in question. "Relating to", or "touching", the matter, *are not words which are synonymous with "relevant" and "material," nor do they have such legal significance as these latter words.*

*Id.* at 414–15 (emphasis added). This view of the district court's role makes great sense in light of the limited and summary nature of a district court's review of an application to enforce a subpoena. North American wants this court to make an evidentiary ruling in the underlying proceed-

ing as to whether the evidence in the written evaluations would be proper rebuttal evidence. Such a ruling is the province of the Administrative Law Judge who is hearing the case. He may well rule in favor of North American on the evidentiary question; his ruling on the Petition to Revoke the Subpoena in no way binds him when ruling on the admissibility of the evidence. If he were to rule in North American's favor, no harm is done; if the evidence is admitted, North American may appeal an adverse decision to the Board and ultimately to the Court of Appeals. The district court's role in a subpoena enforcement ruling is inconsistent with deciding questions of evidence in the underlying proceeding. The court will therefore rule that North American's objections as to the relevance of the subpoenaed documents are not well taken.

 From a slightly different perspective, North American has argued that the *timing* of the subpoena justifies denial of the application. Although North American raises the issue in the context of its claim that the evidence would be improper rebuttal and an attempt to reopen the case-in-chief, an argument the court finds unpersuasive, the issue of when the subpoena was served does merit attention. Section 11(1) of the Act, 29 U.S.C. § 161(1), provides that the Board "shall at all *reasonable* times have access to ... any evidence ... that relates to any matter under investigation or question.". The issue presented by this case is whether a subpoena served after the Counsel for the General Counsel has rested in case-in-chief is served at a "reasonable" time.

North American's argument points to two possible ways in which the subpoena was served at an unreasonable time: (1) the "eleventh hour" nature of the subpoena, coming after the NLRB's case-in-chief was completed; and (2) the current procedural posture of the proceeding being such that the hearing is over but for the possible rebuttal evidence from the subpoenaed documents. The *Dutch Boy* court commented on similar arguments:

We reject as frivolous Dutch Boy's contention that after the Board's counsel had put on a bare prima facie case, Dutch Boy was free to refuse to produce at the hearing any more documents. *See* section 11(1), 29 U.S.C. § 161(1). Also frivolous is its contention that the Board cannot subpoena documents that may relate only to a defense that may never arise; Congress has given the Board the power to subpoena information "that relates to any matter under investigation or in question." *Id.*

606 F.2d at 933–94 n. 4. Thus, the fact that the subpoena here was issued after Counsel for the General Counsel rested his case-in-chief does not violate § 11(1), including the "reasonable time" requirement. The "eleventh hour" nature of the subpoena does not make it unreasonable.

Likewise, the current procedural posture does not support a claim of unreasonableness. The subpoena was served near the beginning of North American's presentation of its defense; it was North American's continuing refusal to produce the subpoenaed documents throughout the remaining proceedings that resulted in the hearing being finished but for the NLRB's possible rebuttal based on the documents. If the issuance of the summons was not unreasonable at that time, then the current procedural posture of the case cannot make enforcement of the subpoena unreasonable in light of the role North American's refusal played in necessitating the application at this stage of the proceedings.

Finally, the message of the quotation above from *Dutch Boy* is that a subpoena is proper even when it is designed to produce material concerning a defense that may never arise; the focus is on relevancy to the investigation, not relevancy to the issues at the hearing. Combined with the language which allows for subpoena issuance even after the prima facie case has been set out in the case-in-chief, this court concludes that a subpoena is proper even when (1) issued after the Board has rested its case-in-chief, and (2) it seeks information which ultimately may not be proper

evidence at the hearing because it is irrelevant (in the sense that it could not be produced because, in *Dutch Boy*, it relates to a defense which may never arise, and here, in that it relates to a potentially improper attempt at rebuttal).

The court therefore rejects North American's arguments, and finds that the NLRB's investigation is within its scope, the documents are described in the summons with sufficient particularity, and those documents are reasonably relevant in that they relate to or touch the matter under investigation, which is the control over owner-operators exercised by North American. Under the principles described above, the NLRB's subpoena is entitled to enforcement.

North American raises a second issue which it claims justifies denial of the application for enforcement: the privacy interests of employees and of North American. In essence, North American argues that employees have an interest in their personnel files remaining confidential, so that disclosure of the evaluations would invade the employee's right to privacy. At the same time, the disclosure of the evaluations violate North American's privilege of confidentiality of communications within an organization by discouraging frank and open communications within the company.

Both parties have cited to several cases involving somewhat analogous disputes under the Federal Rules of Civil Procedure.[2] However, neither party has found case law relating to privacy claims in subpoena enforcement proceedings. An examination of that law helps resolve the dispute raised by the privacy claims.

█ In the case of employee privacy, the court seriously doubts that North American has any standing to assert the privacy interests of its employees. *See NLRB v. Q–T Shoe Mfg. Co.*, 409 F.2d 1247, 1250 (3d Cir.1969); *NLRB v. Wyman-Gordon Co.*, 270 F.Supp. 280, 285 (D.Mass.1967), *set aside*, 397 F.2d 394 (1st Cir.), *rev'd*, 393 U.S. 939, 89 S.Ct. 303, 21 L.Ed.2d 275 (1968). Assuming that North American does have standing, it is nevertheless clear that employee records are not absolutely protected from disclosure during production of documents pursuant to an NLRB subpoena. In fact, both the *Q–T Shoe Mfg.* and *Wyman-Gordon* courts ordered enforcement despite claims of employee privacy.

The third court which considered an employee privacy claim in the context of an NLRB subpoena proposed an eminently reasonable solution to the situation posed by disclosure of employee records. In *NLRB v. Martins Ferry Hospital Ass'n*, 649 F.2d 445 (6th Cir.1981), the court was faced with a request for employee W–4 forms in order to determine the validity of signatures on union authorization cards signed by employees. The court recognized that the forms contained private information (marital status, number of tax exemptions, etc.) which would be of no concern to the Board. The *Martins Ferry* court allowed the employer to make copies

**2.** The court has serious reservations about whether privileges recognized under the rules of discovery in civil actions apply in a subpoena enforcement proceeding. Rule 26(b) of the Federal Rules of Civil Procedure allows for discovery of "any matter, *not privileged*, which is relevant to the subject matter involved in the pending action ..." (emphasis added). Thus, privileges to discovery are explicitly recognized as a limitation on discovery, so that cases concerning the existence of privileges to bar discovery requests will naturally arise. The statute at issue here, however, does not recognize a limitation on NLRB subpoena power in the form of privilege; it gives the Board power to subpoena information relating to matters under investigation or in question. 29 U.S.C. § 161(1).

This appears to exclude the issue of privilege from consideration of subpoena enforcement applications.

One court has interpreted the provision of § 161(1) concerning the Board's quashing of a summons as potentially including consideration of grounds for denying enforcement like unwarranted interference with first amendment rights or claims that production of evidence would "harm the public interest." *Drukker Communications, Inc. v. N.L.R.B.*, 700 F.2d 727, 730–31 (D.C.Cir.1983). Whether this analysis would apply here is unclear. Out of an abundance of caution, the court will consider both privacy claims made here, although in the context of subpoena enforcement proceedings.

of the records and obliterate the private information of no use to the Board. *Id.* at 448–49. This ruling served both competing interests by giving the Board the information it wanted (the signatures) while protecting the privacy rights of the employees.

█ At issue in the administrative proceeding is whether North American controls its owner-operators. The NLRB seeks to obtain the written evaluations of the dispatchers and counselors because it believes that those evaluations may contain evidence which would rebut North American's claim that it exerts no control. The NLRB does not seek information about specific dispatchers or counselors, but rather about dispatchers and counselors in the abstract sense—i.e., that dispatchers *in general* play certain roles in North American's control over the owner-operators. Such a proposition could be established without use of the actual names of the dispatchers or counselors, provided a consistent system of pseudonyms ("Dispatcher A" or "Dispatcher 1," etc.) would be inserted in the documents so as to allow the NLRB and the Administrative Judge to see what individual dispatchers or counselors said or did. This system would provide the Board with the information it seeks while protecting against specific employee's names being mentioned in court or connected with particular evaluations. Production of these redacted documents would be far superior to no production at all or unprotected production, and therefore the court will order production of the documents in this redacted form.

█ North American also asserts its own privacy interest in confidential communication within the company. It claims that disclosure would discourage frank and open communication within the company, which might impact on such things as compliance with Department of Transportation safety requirements. North American backed off from this position somewhat in its reply brief, and rightfully so. It has provided nothing more than its assertion that communications will be less frank. The NLRB does not seek all internal documents of the company, but rather only the written evaluations of dispatchers and counselors. Those evaluations will continue to be made because they apparently play an important role in the internal operations of the company. The court sees no real "chilling" of these types of confidential communications occurring as a result of this subpoena's enforcement.

The cases cited by North American concerning internal communications within organizations are unpersuasive because they do not directly apply here. Those cases presented strong public policy reasons for refusing to allow discovery of evaluation materials. *See New York Stock Exchange v. Sloan*, 22 F.R.Serv.2d 500, 503 (S.D.N.Y. 1976) (disclosure of evaluations of accountants could hamper firm's and professions' ability to maintain and improve performance); *Banks v. Lockheed-Georgia Co.*, 53 F.R.D. 283, 285 (N.D.Ga.1971) (disclosure of company's own study analyzing its affirmative action programs would discourage self-criticism necessary to development of affirmative action programs);[3] *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249, 251 (D.D.C.1970) (disclosure of minutes and reports of hospital staff meetings may inhibit flow of ideas and advice needed by doctors in responding to life or death situations). Here, there is no corresponding public policy; the evaluations are prepared for internal use, for the sole purpose of evaluating performance from North American's perspective. Because of their internal role, the evaluations will continue to be made; given the fact that the evaluations

---

**3.** Subsequent analyses of the privilege recognized in *Banks* indicate that the privilege applies only to evaluations and materials prepared for mandatory government reports, *see Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 374 (N.D. Ill.1982); *O'Conner v. Chrysler Corp.*, 86 F.R.D. 211, 217 (D.Mass.1980); *Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431, 434 (E.D.Pa.1978), and may be limited to cases involving reports or studies of response to governmental affirmative action requirements. *Resnick*, 95 F.R.D. at 374 n. 2.

will be redacted, and pseudonyms used for identification purposes, it is difficult to see how frank communication will be inhibited.[4]

The court is convinced that the privacy concerns raised here are either non-existent or are adequately protected by redaction. The NLRB is entitled to production of the written evaluations in redacted form so as to have an opportunity to determine whether they contain evidence suitable for use in rebuttal. North American may raise its evidentiary objections in the hearing itself, and the Administrative Judge (and ultimately the Court of Appeals) may determine the propriety of their admission as rebuttal evidence.

For these reasons, the petitioner's application is hereby GRANTED. The respondent, North American Van Lines, Inc., is hereby ORDERED to produce the written evaluations requested in item number 4 of the subpoena served on March 22, 1985. Respondent shall redact the evaluations to remove the names of employees, replacing those names with a consistent set of pseudonyms so as to specify individuals mentioned in the evaluations without revealing their names.

---

**4.** It is also difficult to see how production of the documents would adversely affect efforts to encourage owner-operators to comply with Department of Transportation safety requirements "for fear of later embarassment or liability [which] could only result in a disincentive for Respondent to maintain or improve its standards." North American Brief, p. 18. First, there is absolutely no link between the subpoenaed evaluations and any activity of the company other than its internal evaluative process. Given the redacted form of the documents, it is hard to see how any dispatchers or counselors could be "embarassed" or "liable" *as a result of disclosure.* Second, compliance with safety regulations is required by Department of Transportation regulation and by statute; it is quite improbable that dispatchers, counselors and owner-operators will violate the law because of the production of these redacted evaluations.